[S. F. No. 334. In Bank.—March 10, 1896.]

## PETALUMA SAVINGS BANK, PETITIONER, *v.* SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, ETC., RESPONDENT.

DIVORCE — DECREE FOR ALIMONY—RECEIVER OF HUSBAND'S SEPARATE PROPERTY—JUDGMENT LIEN—EXECUTION SALE—LEAVE OF COURT NOT REQUIRED.—The appointment of a receiver of the separate real estate of the husband in an action for a divorce, in order to enforce a decree for alimony awarded to the wife, does not prevent the enforcement of a judgment lien upon such real estate by a judgment creditor of the husband, whether such lien be prior or subsequent to the lien of the decree for alimony, and it is not necessary that there should be an application by such judgment creditor to the court appointing the receiver before proceeding to sell such real estate under execution.

ID.—OBJECT OF APPOINTMENT OF RECEIVER—SECURITY FOR ALIMONY.—The whole object of the appointment of a receiver in an action for a divorce and alimony is to provide security for the payment of such an allowance as is made for the maintenance of the divorced wife, and this object would be accomplished by investing the receiver with the title and control of some productive property of the husband, out of the income of which the allowance may be paid, or by authorizing the sale of property to create a fund, the income of which would be applied to that purpose.

ID.—TITLE OF RECEIVER—SUBJECT TO LIENS—RIGHTS OF PRIOR LIENHOLDERS.—The receiver takes the husband's property in any case, subject to all prior liens and encumbrances, and the right to enforce such liens cannot be made to depend upon the mere volition of the court or judge making the appointment; but the holders of such liens who are not parties to the divorce suit, or subject to the jurisdiction of the court in which it is pending, have the right to take such proceedings as the law exacts for preserving or enforcing their liens according to their priority.

ID.—RIGHTS OF SUBORDINATE LIENHOLDER—LEAVE TO SELL—ABUSE OF DISCRETION—LEAVE UNNECESSARY.—The holder of a second lien upon the real estate held by the receiver, though subsequent and subordinate to that of the wife who has the decree for alimony, is entitled to protect and preserve such right as he has, by a sale under execution subject to the prior lien of the decree, and if leave to sell were necessary in such case, the refusal of it by the court appointing the receiver would be an abuse of discretion, but such leave is not necessary where the sale under execution involves no physical disturbance of the possession of the receiver, and such sale is necessarily subject to a prior lien which the receiver is appointed to enforce.

Application for *mandamus* to the Superior·Court of the City and County of San Francisco. J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

*Edward Lynch,* for Petitioner.

It would be contempt for the judgment creditor to proceed against the property without leave of the court appointing the receiver, and the sale would be void; but such leave will never be denied when properly applied for. (High on Receivers, 2d ed., sec. 141, p. 117; *Angel* v. *Smith,* 9 Ves. 335; *Crone* v. *Odell,* 2 Molloy, 496; *Gooch* v. *Haworth,* 3 Beav. 428; *Smith* v. *Effingham,* 7 Beav. 357; *Russell* v. *East etc. Ry. Co.,* 3 Macn. & G. 104; *Wiswall* v. *Sampson,* 14 How. 52; *Potts* v. *Warwick etc. Co.,* Kay, 142; *Taylor* v. *Carryl,* 20 How. 583; *Yuba County* v. *Adams,* 7 Cal. 35; *Milwaukee etc. R. R.* v. *Milwaukee etc. R. R. Co.,* 20 Wis. 179; 88 Am. Dec. 740; *Eyton* v. *Denbigh etc. Ry. Co.,* L. R. 6 Eq. 14; *Davis* v. *Gray,* 16 Wall. 217; *Barton* v. *Barbour,* 104 U. S. 158; *In re Tyler,* 149 U. S. 183, 187; *Brooks* v. *Greathed,* 1 Jacob & W. 176; *Rankin* v. *Harwood,* 2 Phil. Ch. 22; *Drewry* v. *Thacker,* 3 Swanst. 547.) *Mandamus* lies to compel respondent to make the order. (Code Civ. Proc., sec. 128, subd. 548; *Tawas etc. R. R. Co.* v. *Circuit Judge,* 44 Mich. 479; *Ex parte Bradley,* 7 Wall. 377; *Port Huron etc. Ry. Co.* v. *Judge etc.,* 31 Mich. 456; *Peck* v. *Jenness,* 7 How. 612–14; *Willis* v. *Farley,* 24 Cal. 500; *People* v. *Davidson,* 30 Cal. 391; *Rosenberg* v. *Frank,* 58 Cal. 400; *Estate of Hinckley,* 58 Cal. 505; *Merced etc. Co.* v. *Fremont,* 7 Cal. 132; Tapping on Mandamus, 1; *Virginia* v. *Rives,* 100 U. S. 323.) The superior court of San Francisco has no jurisdiction in *White* v. *White,* to satisfy judgments or claims of other creditors of G. E. White; and cannot prevent the enforcement of the judgment of the superior court of Mendocino county. (*Pico* v. *Sunol,* 6 Cal. 294, 295; *Anthony* v. *Dunlap,* 8 Cal. 27; *Rickett* v. *Johnson,* 8 Cal. 35; *Chipman* v. *Hibbard,* 8 Cal. 270; *Phelan* v. *Smith,* 8

Cal. 521; *Uhlfelder* v. *Levy,* 9 Cal. 607; *Gorham* v. *Toomey,* 9 Cal. 77; *Hockstacker* v. *Levy,* 11 Cal. 76; *Gregory* v. *Ford,* 14 Cal. 143; 73 Am. Dec. 639; *Crowley* v. *Davis,* 37 Cal. 269; *Flaherty* v. *Kelly,* 51 Cal. 145; *Wilson* v. *Baker,* 64 Cal. 475; *Moulton* v. *Knapp,* 88 Cal. 446; *Norton* v. *Atchison etc.,* 97 Cal. 397; 33 Am. St. Rep. 198; *Eldred* v. *White,* 102 Cal. 604; *Rankin* v. *Harwood, supra; Russell* v. *East etc. R. R. Co., supra; Ellicott* v. *United States Ins. Co.,* 7 Gill, 307; *State* v. *Superior Court,* 34 Pac. Rep. 430.)

*Henry E. Highton, Walter H. Linforth, William T. Baggett,* and *Dunne & McPike,* for Respondent.

*Mandamus* does not lie to control the discretion of a court. (Code Civ. Proc., sec. 1086; High on Extraordinary Remedies, secs. 156, 177, 180, 188–90; *Draper* v. *Noteware,* 7 Cal. 276, 278; *Crandall* v. *Amador County,* 20 Cal. 72, 74, 75; *Flagley* v. *Hubbard,* 22 Cal. 34, 37; *People* v. *Moore,* 29 Cal. 427, 429; *Kimball* v. *Union Water Co.,* 44 Cal. 173, 175; 13 Am. Dec. 157; *People* v. *McLane,* 62 Cal. 616; *Clune* v. *Sullivan,* 56 Cal. 248, 250: *Donohue* v. *Superior Court,* 93 Cal. 252; *Gutierrez* v. *Superior Court,* 106 Cal. 172; *Lewis* v. *Barclay,* 35 Cal. 213; *Francisco* v. *Manhattan Ins. Co.,* 36 Cal. 283, 286; *People* v. *Pratt,* 28 Cal. 166, 169; 87 Am. Dec. 110; *Strong* v. *Grant,* 99 Cal. 101; *Tomkin* v. *Harris,* 90 Cal. 201, 202; *Jacobs* v. *Board of Supervisors,* 100 Cal. 121, 129.) One who, with knowledge of the appointment of a receiver, attempts by garnishee's process to reach credits which are due the receiver, will be punished for contempt. (High on Receivers, 3d ed., secs. 164, 747; Beach on Receivers, sec. 742.) It rested in the discretion of the defendants to allow the lien of the petitioner to be enforced by execution. (Beach on Receivers, sec. 654.)

Beatty, C. J.—This is an original proceeding by *mandamus* based upon the following facts:

Since the year 1887 there has been pending in the superior court of San Francisco an action for divorce,

entitled *George E. White* v. *Frankie White*, in which a judgment was entered on May 15, 1879, granting a divorce to the defendant upon grounds stated in her cross-complaint. By said judgment she was awarded the community property and $200 per month, further judgment being deferred until the coming in of the report of a referee appointed to take account of the community property and the separate property of the plaintiff.

August 29, 1893, the referee reported that there was no community property, but that the plaintiff, George E. White, had separate property consisting mainly of land situated in this state, of the value of $206,000 over and above his liabilities, estimated at $138,000. June 29, 1894, this report was confirmed. On June 18, 1894, an order was entered in said action appointing a receiver therein. The receiver first appointed failed to qualify, but on June 27, 1894, Wilson T. Smith—a subsequent appointee—assumed the office and entered upon the discharge of his duties. He has since claimed to be in possession as receiver of all the real property of said George E. White.

On February 9, 1895, another judgment was entered in said action of *White* v. *White* in favor of the defendant, Frankie White, for the sum of $100,000, and by said judgment the receiver was continued in office and required to enforce the same by taking possession of all the separate property of said George E. White, including said real estate, and by managing and disposing of said property.

All the personal property of said George E. White had been sold under execution prior to June 15, 1894, and his only property subject to execution was, and is, said real estate. The first or interlocutory judgment of May 15, 1889, was not declared to be a lien upon any property, and did not require said George E. White to give any security for the payments thereby decreed, but provided that in the event the community property should "be insufficient out of the reasonable income and profits thereof" (*sic*) the defendant might apply for further

judgment awarding to her a suitable maintenance out of the separate property (of plaintiff) to be secured by transfer of such property, or a sufficient portion thereof, to a trustee, or in some other suitable manner.

On April 3, 1895, the plaintiff herein, the Petaluma Savings Bank, filed in the superior court of San Francisco, and in said action of *White* v. *White*, an affidavit setting forth, in addition to a number of formal allegations, the facts that on May 22 and May 23, 1894, judgments had been duly rendered and entered by the superior court of Mendocino county in favor of said bank, and against said George E. White, in several actions for an amount aggregating about $45,000, and which remained unsatisfied to an amount exceeding $37,000; that said judgments were immediately after rendition enrolled and docketed in the clerk's office; that on and prior to May 26, 1894, transcripts of said dockets were duly recorded in the counties of Trinity, Humboldt, Kern, and Tulare, wherein all of the lands of said George E. White were situated; that said judgments were still in force; that said receiver Smith was not in the actual possession of any of said lands, but was claiming to be in possession and endeavoring to take possession of the same; that said bank intended to. apply to the superior court of Mendocino county for an order directing the sheriffs of Mendocino, Trinity, and Humboldt counties to sell said lands in the manner provided by law, but not desiring to bring about any conflict of jurisdiction between the superior courts of San Francisco and Mendocino, or their respective officers, and not desiring to do any act which might be construed as a contempt of the San Francisco court, it had suggested these facts, and, disclaiming any intention to submit itself, or the merits of its several judgments, to the jurisdiction, process, or orders of the said court in the action of *White* v. *White*, it thereupon prayed the superior court of San Francisco and J. C. B. Hebbard, the judge presiding in the department to which the said case of *White* v. *White* had been assigned, to make an

order therein directing its receiver not to interfere with the officers of the superior court of Mendocino county in the lawful execution of said judgments in favor of said bank.

Upon the filing of this affidavit a rule to show cause why such order should not be made was duly served on Frankie White and the receiver, Smith, but upon the hearing the court refused to make the order prayed, upon the ground that the original judgment of May 15, 1889, in the case of *White* v. *White* was a lien prior in time and in right upon all of the property of said George E. White.

Thereupon the Petaluma Savings Bank commenced this proceeding, in which it reaffirms by its complaint all the allegations of its petition to the superior court, and sets forth the other facts above stated. It also alleges that said George E. White is the owner of about 30,000 acres of land situated in Mendocino, Trinity, and Humboldt counties, all of which is subject to the lien of its said judgments of May 22 and May 23, 1894, and of all of which said receiver claims to be in possession and control; that it is desirous of having its judgments satisfied by the sale of said lands, but is advised and believes that it would be an idle and foolish act to proceed to sell without the order and permission asked of the superior court of San Francisco—the defendant herein—for the reason that such proceeding would be a contempt of court. It is finally alleged that said George E. White is insolvent, has no personal property, and that the plaintiff has no other remedy for the enforcement of its legal rights.

Wherefore it prays this court to issue its writ of mandate, or other appropriate writ, commanding the superior court of San Francisco and the judge thereof to make an order which will permit it to enforce its judgments by sale of said lands without molestation.

The defendant demurs generally to this complaint, and answers setting up some special matters of defense. The facts above stated are those confessed by the de-

murrer. The special matters of defense will be considered hereafter.

This proceeding is taken by the plaintiff out of abundant caution in order not to incur the penalties of a contempt in interfering with property claimed to be in the custody of a receiver, if an execution sale of the property should be deemed an unwarranted interference, and in order that it may make a sale, the validity of which would be unquestionable; and we are cited by petitioner to cases in which the commencement of actions against receivers without previous leave obtained of the court by which they were appointed, or the unauthorized interference with property in their possession, has been held a contempt, and to other cases in which it has been held that the sale under execution of property in the hands of a receiver is void and passes no title.

The plaintiff does not insist that the law of this state is or ought to be such that it would be justly chargeable with a contempt of the superior court of San Francisco if it proceeded in the usual way to enforce the judgments rendered in its favor by the superior court of Mendocino county, or that a sale of the lands subject to the lien of its judgments without leave of the San Francisco court would be invalid (except as against superior liens, if any such there be). But it claims that it has a clear legal right to proceed to sell, and that it should either be told plainly that it is entitled to proceed without leave, if that is the opinion of the court, or, if the court should be of the opinion that leave is necessary, the writ of mandate should issue, as prayed, upon the ground that the superior court has no discretion in such case to deny the order requested.

The position of the defendant with reference to these points is not very easy to determine. His counsel on the oral argument refused to commit himself to any definite position, but it would seem from his memorandum of points and authorities that he now asserts in effect that the plaintiff cannot proceed to enforce its

judgments by sale of the lands of George E. White without obtaining the order which the defendant has refused to make. He claims further that it was within the judicial discretion of the defendant to grant or refuse the order, and that, having refused, its action cannot be controlled by *mandamus*, but that the sole remedy of the plaintiff, if aggrieved by the denial of its petition, is an appeal from the order. If these several propositions advanced by counsel for defendant are sound law as applied to this case, the position of holders of valid liens upon the property of married men is not especially secure or enviable, and it is worth while to consider whether our divorce laws involve the consequences which the position of counsel implies.

The only authority for the appointment of a receiver in a divorce suit is to be found in section 140 of the Civil Code, which reads as follows: "The court may require the husband to give reasonable security for providing maintenance or making any payments required under the provisions of this chapter, and may enforce the same by the appointment of a receiver, or by any other remedy applicable to the case." So far as I am advised, this section has not been the subject of judicial construction, and the powers and duties of a receiver appointed in pursuance of its provisions have not been defined; but it would not seem difficult to determine in what cases and for what purposes he is to be appointed. The whole object of his appointment is to provide security for the payment of such allowance as is made for the maintenance of the divorced wife, and this would be accomplished by investing him with the title and control of some productive property of the husband, out of the income of which he could pay such allowance, or by authorizing the sale of property to create a fund, the income of which would be applied to the same purpose. In either event, and in any case, the receiver would take the property of the husband, or such portion of it as the court might designate, subject to all prior liens and encumbrances, and the right to enforce such liens could

not be made to depend upon the mere volition of the court or judge making the appointment. It would necessarily follow, therefore, either that such judge would be invested with authority to determine the validity and priority of all liens upon the property, and that all holders and claimants of such liens must make themselves parties to the divorce suit, and submit themselves to the jurisdiction of the court in which it was pending, or that they must have the right, with or without asking leave of such court, to take such proceeding elsewhere as the law exacts for preserving and enforcing their liens according to their priority.

Which of these two positions is assumed by respondent is not, as above stated, very clearly indicated by the argument of counsel, and neither is it very clearly to be implied from the order denying plaintiff's application for leave to sell, or the ground upon which it was based, viz., that the interlocutory judgment of May 15, 1889, in the case of *White* v. *White* was a lien prior in time and in right upon the property of George E. White. I shall not, therefore, devote much space to the discussion of a doctrine which is not distinctly asserted, and has nothing to support it. It is enough to say that there is nothing in the law of California to justify the contention—if such is the contention—that when a wife sues her husband for a divorce, and obtains the appointment of a receiver of his property for her benefit, not only their community property, but his entire separate estate, are as effectually sequestrated in the hands of the court in which the action for divorce is pending as they would be in case of death or insolvency; and that thenceforth all his creditors must come into that court and by motion or petition in that action seek, not the relief to which in the ordinary course of law they would be entitled, but such relief as it may adjudge and be able to afford in the exercise of a plenary power to dispose of the impounded estate and distribute its proceeds.

This proposition being disposed of, the alternative above stated alone remains: It must be true that the

holders and claimants of prior liens and encumbrances upon the property held or claimed by the receiver, not being proper parties to the divorce suit or subject to the jurisdiction of the court in which it is pending, have the right to take such proceedings elsewhere as the law exacts for preserving or enforcing their liens according to their priority. If, for instance, real property has been mortgaged, the holder of the mortgage must commence his action to foreclose in the county where the land is situate within a limited time, or his security and claim are lost, just as, in the present case, the plaintiff must sell the lands subject to the lien of its judgments within two years or lose its security. And, if these steps must be taken, what right has the court appointing the receiver to prevent them? What discretion has it to refuse leave to proceed, if leave must be requested? Certainly not an absolute discretion, for that would amount to a power of confiscation of property rights, which are as full, as complete, and as much entitled to protection as any that exist. It must be, then, that such discretion as the court appointing the receiver has to prevent proceedings by adverse claimants to the property in the custody of the receiver is a regulated discretion which cannot be abused.

This proposition I do not understand to be contradicted, but the respondent contends that there has been no abuse of discretion, and that even if there had been, *mandamus* will not lie to compel a judge to make an order which he can only make in his judicial capacity, and which, acting in such capacity, he has refused to make.

As to whether there has been any abuse of discretion, that depends upon the scope of the inquiry which a court is entitled to make in passing upon such an application as the plaintiff presented to respondent.

It is undoubtedly the prevailing doctrine that courts of equity will not permit their receivers to be sued, or property in their possession to be seized or sold, without leave asked and granted, but since the refusal of leave

to sue in other tribunals or to enforce the judgments of other courts would in many cases destroy or impair rights which the court appointing the receiver has no power to conserve, it is the boast of such courts that they never refuse leave in a proper case.

If a claimant of real property, under title adverse to that of the parties represented by the receiver, asks leave to commence his action of ejectment, no court would hesitate to grant his motion. It would not attempt to try the question of title—a question appertaining to another forum—with a view to denying leave to sue, if, in its opinion, the title asserted was not a good one.

Upon the same principle, if a receiver of the superior court of San Francisco should be in possession of land situate in some other county, and subject to a mortgage, the application of the mortgagee for leave to make the receiver a defendant would be granted without any attempt to inquire into the validity of the mortgage, or its priority as a lien, for those are precisely the questions to be determined in the action to foreclose, which, by the express mandate of the constitution, must be commenced in the county where the land is situated. (Const., art. VI, sec. 5.)

If, in such a case, the court appointing the receiver should require the mortgagee to satisfy it of the validity of the mortgage, or, in other words, to litigate the whole question of the mortgagor's liability, and to establish it on the motion as a condition precedent to any permission to sue the receiver in the county where the land was situate, it would be as much an abuse of discretion as if it should make its leave to sue conditional upon a waiver by the mortgagee of all claim of priority as against the receiver; for the doctrine to be deduced from the authorities cited in the briefs is that, whenever the case is such that the court appointing the receiver cannot protect an asserted right in the cause before it, the party will be allowed to proceed in the proper forum to establish his right if he can, and to enforce it by the appropriate means.

But the plaintiff here is not asking leave to sue the receiver. It merely asks permission to take the step which the statute makes imperative in order that it may preserve such rights as it has, and the fact that its liens may be subsequent and subordinate to the lien claimed by Frankie White does not seem to be a sufficient ground for destroying them altogether. The holder of a second lien is entitled to protect it, and to preserve such rights as it gives him, and the only way this plaintiff can preserve what it has is to sell the land subject to its liens within the two years prescribed by the statute. (Code Civ. Proc., sec. 671.) If it cannot sell without leave, and no leave is granted, its liens, such as they are, will soon expire, after which it will become a mere general creditor holding a claim subordinate, not only to the supposed lien of Frankie White, but to all liens of subsequent mortgagees and judgment creditors, if any such there be. What excuse, then, does the assumed priority of Frankie White's lien afford for subjecting the plaintiff to this loss, or risk of loss? If her lien is prior, the sale of the land will not destroy her priority; it will merely preserve and perpetuate such rights as the plaintiff has, and will enable it, after her claims are satisfied, to take what may be left of White's estate in preference to those whose liens are of lower rank, or who have no liens at all. If this view is correct, the reason assigned for refusing plaintiff's application to sell is no reason at all, and the refusal itself—on the assumption that leave to sell is necessary—was clearly an abuse of discretion.

This brings us to the question whether leave to sell was necessary, and, if so, whether *mandamus* lies to compel the respondent to make the order.

To my mind it seems clear that if the first question were answered in the affirmative the second must receive the same response; for, if the exercise by plaintiff of its clear legal right to preserve its liens depends upon the permission of the respondent, it cannot deny the exercise of such right for a reason that is absolutely

futile and groundless.   But I am of the opinion that no
leave to sell was required, either to avoid the commis-
sion of a contempt or in order to pass a title strictly
corresponding to the actual rank of plaintiff's lien, as
to which it is unnecessary to express an opinion.   A
sale by plaintiff would involve no physical disturbance
of such possession as the receiver may have, and, there·
fore, would be no contempt of court.   The rights and
relative positions of the parties would not be changed.
The title transferred would be good as against subordi-
nate liens, and subject to such as were superior, and
the question of title would be the proper subject of liti-
gation in actions commenced in the counties where the
lands are situate between those claiming under the re-
ceiver and those claiming through the execution sales,
as was the case in *Wiswall* v. *Sampson*, 14 How. 52.

That case is cited by both parties to the proposition
that an execution sale, without leave, of property in the
possession of a receiver, will pass no title.   But it does
not sustain the proposition in a general sense.   The de-
manded premises in that action had belonged to Tick-
nor, who had conveyed them in fraud of creditors to
Day prior to December, 1840.   At that date plaintiff's
lessors recovered a money judgment against Ticknor,
execution upon which was returned *nulla bona.*   In 1842
another creditor recovered judgment against Ticknor
and thereafter commenced a suit in equity to set aside
the conveyance to Day.   He succeeded in his action,
and after the conveyance to Day was set aside a receiver
of the property was appointed.   While the receiver was
in possession plaintiff's lessors, without leave asked or
granted, sold it under an *alias* execution issued upon his
judgment of 1840.   The defendant in the ejectment
suit claimed under the receiver, and it was held in his
favor that the execution sale passed no title.   The·rea-
son for so holding is obvious.   By the conveyance to
Day the land had been put beyond the reach of credit-
ors, and had been made subject to their claims solely
by means of the action in equity to set that conveyance

aside. The fund, in other words, was the creation of the court appointing the receiver, and was necessarily subject to its disposition, to be applied to the satisfaction of the claims of such creditors only as could show a right to come in and share in the distribution. To hold, in such a case, that the execution sale passed a title superior to that of the receiver—a title relating back to the date of the first judgment—would have been to hold that a creditor by prior judgment may stand by while a junior creditor at his sole expense and risk uncovers assets of the debtor, and then step in and reap the entire benefit, which is neither equity nor law. The decision in that case, therefore, lends no support to the claim asserted here, and the general expressions in the opinion of the court, which may seem to countenance it, must be limited in their effect by reference to the facts of the case under consideration. As to the passage cited from the text of Freeman on Judgments, volume 1, section 207, it seems to be based entirely upon the case of *Wiswall* v. *Sampson, supra,* and is not to be construed in a different sense. In that case the court comments particularly upon the argument advanced in behalf of the plaintiff therein, to the effect that, since the execution sale involved no physical disturbance of the possession of the receiver, it was therefore no contempt, and hence that the sale should be upheld; but, they say, conceding (and implicitly deciding) that there was no contempt, this does not meet the objection. The question is not whether there was a contempt, but whether the title passed, and no title passed, for the reason that the fund belonged to the court that had created it, for the benefit of the creditor who had by his suit removed the impediments preventing the levy of any execution. It is scarcely necessary to point out the radical difference between that case and this, but it may be observed that neither Frankie White nor the respondent can claim the merit of having created any part of the fund in controversy here, or of

having rendered it available for the payment of George E. White's debts. The rights of his creditors, including that asserted by the plaintiff, are conferred by the laws of the state and are not subject to be divested by the refusal of leave to take the steps which the law requires for their preservation; and since such leave cannot be denied, there is no reason for requiring that it should be asked.

This conclusion, of course, disposes of the case, and it becomes unnecessary to notice specifically the facts alleged in the answer of defendant, who charges, in effect, that the judgments of plaintiff were obtained by fraud and that an action has been commenced to set them aside, that Frankie White, at the time of the filing of her cross-complaint in the divorce suit, filed notice of *lis pendens*, and afterward recorded the interlocutory decree of May 15, 1889, in all the counties in which the lands of George E. White are situated.

None of these allegations, conceding them to be true, affords a reason for holding that the Petaluma Bank should not be allowed to sell. If its judgments are fraudulent, the receiver is pursuing the proper course in suing to set them aside, but it may be that he will not succeed in establishing the fraud which he asserts, and in the meantime he should not be allowed to destroy the security of debts which may be determined to be valid without resorting to the usual means of an injunction, and giving other security which will indemnify the bank if it shall ultimately succeed in establishing the validity of claims which are at present apparently valid.

As to the rest of the answer, it consists of a claim upon various grounds (notice of *lis pendens*, etc.) that Frankie White has a superior lien. But, as has been shown, this fact, if it is a fact, does not justify the destruction of the inferior lien. It is no disadvantage to her if the bank is allowed to keep what it has, unless it should happen to turn out that the bank's lien is

really prior, in which case it would, of course, be greatly to her advantage to have destroyed it.

Writ denied.

VAN FLEET, J., McFARLAND, J., HARRISON, J., and GAROUTTE, J., concurred.