SEABOARD AIR LINE RAILWAY v. ATLANTIC COAST LINE RAILROAD CO.

158 So. 459.

Opinion Filed January 1, 1935.

*Fred J. Hampton* and *Birkett F. Jordan,* for Appellant;
R. A. *Burford* and *Fred D. Bryant,* for Appellee.

ELLIS, J.—In July, 1929, the Atlantic Coast Line Railroad Company exhibited its bill in the Circuit Court for Alachua County against the Seaboard Air Line Railway Company to quiet the title to a "strip of land 30 feet wide having a mean length of 1116 feet, more or less, situate, lying and being in the N½ of N½ of Section 8, Township 10, South of Range 20 East, at Gainesville, Alachua County, Florida."

The land is more particularly described by metes and bounds in the bill of complaint and shown upon a map or plat attached to the bill as Exhibit A, to which reference was made in the bill of complaint. The track of the complainant company, hereinafter referred to as the Coast Line for convenience, crosses the track of the defendant Seaboard Air Line Railway, hereinafter referred to as the Seaboard, at the point of intersection above mentioned. The track of the Coast Line leads from High Springs to Rochelle and the track of the Seaboard leads from Waldo to Archer.

The bill was brought under the provisions of Chapter 11383 Laws of Florida, 1925, carried into the Compiled General Laws as Section 5010 to 5019 inclusive.

That Act was construed by this Court in the case of McDaniel v. McElvy, 91 Fla. 770, 108 South. Rep. 820; Rabinowitz v. Houk, 100 Fla. 44 129 South. Rep. 501.

The bill in this case seeks relief against the Seaboard within two of the purposes of that Act as explained in the McDaniel case. The Coast Line asserts title to the land described as the rightful owner of it alleging that the Seaboard asserts claim to it under a conveyance. The complain-

ant Coast Line also seeks to extinguish the claim of the Seaboard as a cloud upon the Coast Line title acquired by adverse possession.

The bill of complaint does not allege that any person or corporation other than the Seaboard is interested in the land in opposition to the complainant's claim of title. The bill complies with the requirements of Section 5014 C. G. L. 1927 in that the complainant deraigned its title setting forth the book and page of such records where any instruments affecting the title are recorded. It also alleged actual possession of the property for a period of more than twenty years openly, notoriously continuously and adversely and that the defendant Seaboard had not during that period of twenty years had actual possession or occupancy of the land.

The defendant interposed its answer in October, 1929. It averred that the strip of land in controversy is included within its right of way of sixty feet wide on the south side of the center line of its main line track and that if the Atlantic Coast Line owns the land in fee such ownership is subordinate to the defendant's ownership because the predecessor of the Seaboard, the Florida Railroad Company, constructed its line of track at that point in 1859, and that ever since that date the predecessors of the defendant and the defendant have continuously cleared, possessed, utilized, occupied and exercised exclusive dominion over said right of way on the south side of this defendant's main track" and that it is now using and exercising exclusive dominion over the strip of land "sixty (60) feet wide on the south side of its main track as its right of way." The answer denied complainant's possession.

The defense is set up to the effect that even if the complainant acquired title under the instrument in writing described in the bill of complaint such title is subordinate to that of the Seaboard because it acquired title to the land,

that is the "sixty-foot" right of way, many years prior to the date of the deeds made by the Plant Investment Company to the Savannah, Florida, and Western Railway Company in April, 1886, and by the deeds from Savannah Bank & Trust Co. to the Savannah,. Florida, & Western Railway Company in March, 1884, or by Colclough to the Florida Southern Railway in April, 1881.

The Chancellor appointed an examiner to take testimony. The examiner's report of the testimony was made in July, 1932. Much evidence was taken. It is embraced in a report covering two hundred and twenty-five pages of typewritten matter including exhibits.

In September the Chancellor rendered a final decree holding that the complainant had failed to establish a legal title to the land in that the deed from Thomas to Young, complainant's exhibit No. 22, failed to describe the lands the title to which was sought to be quieted, and that the deed from Miller, as Executor of Young, to Colclough and Harvard, Exhibit No. 21, also failed to describe the property. The court also decided that the evidence failed to establish by preponderance the complainant's claim to adverse possession for a period of seven years next before filing the bill of complaint. The Chancellor considered that the bill of complaint should be dismissed and so decreed.

An application was made for a rehearing in due course. The complainant urged in that application that the deeds from Thomas to Young and from Miller, Executor of Young to Colclough and Harvard, Exhibit Nos. 22 and 21 respectively, were not essential or necessary links in establishing the complainant's title, that other instruments in writing enumerated in the application and identified by reference to certain exhibits constituted color of title in the complainant and that the testimony in the cause established title in the complainant by adverse possession to the land

under color of title. It was also contended that a certain contract entered into between the Atlantic Coast Line and Seaboard dated May 22, 1905, shown by complainant's Exhibit No. 3, estopped the Seaboard in law and in equity from asserting a right of way beyond thirty feet south of the center of its main line at the point in controversy; that the contract provided that it should remain in force until terminated by either party by giving six months previous notice to the other party and that no such notice had been given.

Four months after the application for a rehearing the Chancellor by decree dated January 17, 1933, annulled and set aside the decree of September and decreed that the complainant was entitled to the relief prayed and that the complainant was the owner of the legal title to the land as against the Seaboard except as to the "space occupied by the track and roadbed of what is usually known as the T. & J. Railroad crossing at or near the western end of the strip of land described in the Bill of Complaint, which space so occupied by said tracks and roadbed is hereby expressly excluded from the operation of said decree."

The decree finally adjudicated the title to the land except the space above mentioned to be in the Atlantic Coast Line. From that decree the Seaboard appealed.

Section 5010 C. G. L. 1927, provides that if the defendant is in the actual possession of any part of the land involved in the suit a trial by jury may be demanded by either party.

In the case of Realty Securities Corp. v. Johnson, 93 Fla. 46, text 50, 111 South. Rep. 532, this Court said, speaking through Mr. Justice BROWN, that under Chapter 11383, *supra,* it is no longer essential to the jurisdiction of the court that the complainant be in actual possession of the land from the title to which it is desired to remove the cloud.

In the case of Reese v. Levin, 98 Fla. 397, 123 South.

Rep. 809, this Court held that Chapter 11383, *supra,* was designed to afford a prompt and adequate method by which the rightful owner of real property may place his own title in repose by obtaining a speedy adjudication of the effect of hostile claims.

No request was made by either party for a jury trial.

The case before the Chancellor resolved itself into a question of evidence as to the character of title held by the complainant whether by mesne conveyances from the original source of title or by adverse possession under color of title.

It sufficiently appears that the original source of title was a Spanish grant known as Arredondo grant, which embraced this small strip of land in the thousands of acres covered by that grant. It was therefore never a part of the public domain of the United States. Considered therefore from the standpoint of the complainant's claim of title by adverse possession under color of title, it becomes immaterial whether there were defective descriptions in the conveyances from Thomas to Young and from Miller, as Executor, to Colclough and Harvard if the complainant entered into possession under other conveyances purporting to convey the land and continued in the adverse possession thereof for the required period. We are unable to say that the record disclosed a clear error on the part of the Chancellor in the finding of fact as to the adverse possession by the Complainant.

In addition thereto the contract entered into between the parties in May, 1905, which is an admission by the Seaboard of the ownership by the Coast Line of the land and that at the point in question the Seaboard claim of ownership did not extend beyond thirty feet from the center of its main tract. That contract in connection with the great amount of evidence offered by the Coast Line as to its actual and notorious claim of possession of the land in question

justified the Chancellor's findings which this Court, holding to the doctrine announced in a long line of decisions, will not reverse unless it clearly appears that the Chancellor erred. See Fuller v. Fuller, 23 Fla. 236, 2 South. Rep. 426; Lewter v. Price, 25 Fla. 574, 6 South Rep. 439, Farrell v. Forest Inv. Co., 73 Fla. 191, 74 South. Rep. 216; Viser v. Willard, 60 Fla. 395, 53 South. Rep. 501; Guggenheimer & Co. v. Davidson, 74 Fla. 485; 77 South. Rep. 266; North Bay Shore Land Co v. Perry, 86 Fla. 322, 98 South. Rep. 139; Town of Bradley v. Kirkland, 110 Fla. 239, 148 South. Rep. 540.

Whether the evidence was substantially sufficient to support the decree is the only question before us. We answer that question in the affirmative.

The decree appealed from is therefore affirmed.

DAVIS, C. J., and WHITFIELD, BROWN and BUFORD, J. J., concur.