## DUNSCOMBE v. LOFTIN et al.

### No. 11351.

Circuit Court of Appeals, Fifth Circuit.

April 12, 1946.

Rehearing Denied May 11, 1946.

964

Carroll Dunscombe, of Stuart, Fla., for appellant.

Russell L. Frink and John B. L'Engle, both of Jacksonville, Fla., for appellees.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

Appellant, as plaintiff, filed a petition asking that she be allowed to sue the trustees in bankruptcy of the Florida East Coast Railway Company. She asserted that the Railway ran over a portion of the Miles or Hanson Grant, to which it had no title and of which she claimed to be the owner; that her claim was not for the land but for the value of the land taken and used without right through eminent domain proceedings or otherwise by the Railway.

She tendered a complaint with her petition wherein she deraigned title from the Kingdom of Spain into Rufus K. Sewall, Annabelle Robertson, and others as tenants-in-common, and alleged that in 1890 Annabelle Robertson, joined by other tenants-in-common, filed, in the United States Circuit Court for Florida, a bill for partition of the land among the tenants-in-common. The Florida East Coast Railway Company was made a defendant for the purpose of seeking a cancellation of a deed to the Railway by R. K. Sewall of a tract of land 100 feet by 450 feet alleged to be ineffectual to convey title. This tract was no part of the right of way of the railroad. In the final decree the Railway was held to have no title to this lot. In that suit commissioners, who were appointed to divide the land among the various claimants, divided the land into lots and made a partition plat which was filed among the public records.

The complaint in the instant case further alleged: that in partitioning said lands the commissioners found a single track railway running across the grant from north to south, which railroad was used as a dividing line by the commissioners between lots 2 and 3, but that neither the commissioners nor the Court allotted any part of said grant to the Railway Company; that the plan of partition was submitted to, and approved by, the Court; that in the final decree of partition, however, the Court, without lawful authority, awarded to the Railway Company the right of way as laid out by the Commissioners and then used and occupied by the Railway Company, but that since the Court had already found that the Railway Company had no interest in said grant, and since the commissioners had awarded no part of the grant to the Railway Company, the Court was without jurisdiction to give to it any portion thereof; that the Railway Company was a Florida corporation empowered to exercise the power of eminent domain and could not acquire land in such a partition proceeding, nor by a claim of adverse possession, and that moreover the only part of the grant in possession of the Railway Company at the time of the partition was that upon which its single track railway was laid; that in due course lots 2, 3, and 4 of the grant were conveyed to Sewall's Point Land Company, and in July, 1919, the grantee therein conveyed lots 3 and 4 to Carroll Dunscombe, who in turn conveyed to Florida Growers, Inc.; that in 1926 the Railway, without claim of right, threw up a grade and double-tracked its railroad over the land; that lots 3 and 4 were partially platted and on May 28, 1928, Florida Growers, Inc., conveyed the unplatted part to plaintiff and included in the unplatted part was the property embraced in the right of way in question; that Florida Growers, Inc., was dissolved for failure to pay its capital stock tax to the State of Florida, and that at the time of the dissolution plaintiff was the owner and holder of all of the outstanding stock of the corporation and became vested with all its rights and claims, including the right to claim the value of the land appropriated by the Railway Company in 1926, or, that is, the portion of the right of way upon which the Railway had built the second of its

double line track of railroad without purchase or condemnation or paying full value as required by the Constitution of the State and of the United States; that the Railway Company had never fenced the lands nor asserted any claim other than to dig pits, grade, and lay ties on and across the land, but that it had authorized the Southern Bell Telephone & Telegraph Company, a corporation also having the right of eminent domain, to erect poles and to string wires across a portion of said property in January, 1926; that at the time the land was appropriated by the Railway Company in 1926 it had a value of $9,000 for which amount, plus interest, the plaintiff claims a vendors lien.

The Trustees of the Railway Company filed what they called legal objections to granting the petition to allow the plaintiff to sue, and also a lengthy report to the Court on the J. K. Dunscombe claim, in which they state that they have examined and investigated the matters alleged in the petition, certain abstracts, the record of the Court, and other public records, and that claim was barred by laches and limitations and otherwise without merit.

The Court denied the petitioner leave to sue, and in a memorandum filed with said order stated that Carroll Dunscombe, petitioner's husband and attorney, acquired from Sewall's Point Land Company on July 28, 1922 [Plaintiff alleged that this conveyance was in 1919], those portions of lots 3 and 4 of the Miles or Hanson Grant through which the Florida East Coast right of way runs, and on April 3, 1928, the title to all the unplatted part of said lots was conveyed to the petitioner, J. K. Dunscombe; that the deed from Sewall's Point Land Company to petitioner's husband is based upon plats of lots 3 and 4, one of which plats was prepared and acknowledged by the grantor in the deed to Carroll Dunscombe and shows the right of way 100 feet wide through said lots; that since petitioner claims through this deed, she is estopped to dispute the existence of the right of way shown on the plat which is a link in the chain of title through which she claims; that the Railway Company was in possession under a claim of right, namely, the decree of the Federal Court entered December 17, 1901, dividing said lands, wherein the Court decreed that the Railway Company was entitled to a right of way to the extent and width as then occupied, laid out, and surveyed through the grant;

that there was no appeal from this decree; that since said date the Railway Company had been in actual undisputed possession pursuant to said decree; that since 1915 or earlier the Railroad's possession of 100 feet of right of way had been evidenced on the ground by the presence of telephone and telegraph poles and right of way monuments along the easterly and westerly sides of the 100-foot right of way; that when Carroll Dunscombe acquired title in 1922 his grantor, Sewall's Point Land Company, was not in possession of any portion of this right of way; and that the petitioner and her predecessor husband took a deed from a grantor out of possession with actual notice of the Railway Company's possession and claim of title as evidenced on the ground by the above-mentioned markers, of which the plaintiff had notice as early as 1922, and that the Railway Company's possession being open, continuous, and uninterrupted, the Railway Company had at least title by adverse possession; that any claim of the plaintiffs to land or compensation which the plaintiff might otherwise have had was long since barred by the statute of limitations and laches, as well as by orders of the Court in the bankruptcy proceedings of the Railroad limiting and fixing the time within which claims might be filed against the Railway; that twenty-three years had elapsed since the plaintiff's husband took title and seventeen years had elapsed since the Petitioner took title. It appears that the lower Court in the receivership proceedings before bankruptcy, by an order dated November 23, 1931, fixed and extended the time for filing claims against the Florida East Coast Railway until March 1, 1932; and that the plaintiff waited until January 19, 1945—more than twelve years after the time fixed by the Court had expired—, before filing her petition.

The plaintiff now insists that the statute of limitations will not bar the constitutional right to receive just compensation for lands taken for public use by a corporation having the power of eminent domain; that the injunctive order of the Court against the filing of a suit against the receivers should toll the running of the statute and should prevent the rendition of a decree adjudging the plaintiff and her predecessor in title to be guilty of laches; that under the issues raised in the case by the pleadings the Court should have afforded her an opportunity to present evidence instead of disposing of the case in the summary fashion of denying the plaintiff the right to bring suit.

966

■ Plaintiff concedes that she filed no claim against the receivers of the Railroad within the time provided by the order of the Court or within the time extended by a subsequent order of the Court, and also that she has no right to recover the land, but she insists that she has a claim for compensation for the land so taken. We think that the question of whether or not the Court should allow the presentation of a claim or the bringing of a suit on an unfiled claim against the receivers or trustees after the time for filing such claim has expired rests somewhat within the discretion of the Court having supervision of the receivership. See 45 Amer.Jur., Receivers, § 245. But this Court held in State of Texas v. Campbell, 5 Cir., 120 F.2d 191, 193, that: "The discretion of a court to refuse to grant leave to sue the receiver in other courts is not an absolute but a regulated discretion which cannot be abused. Petaluma Savings Bank v. Superior Court, 111 Cal. 488, 44 P. 177, and this principle is of such force as between state and federal courts that modernly, permission to sue, unless upon strong considerations, is practically never refused."

In 45 Amer.Jur., Receivers, § 460, it is said that: "Leave to sue is usually granted as a matter of course, unless it is clear that there is no foundation for the claim."

■ It seems that the court appointing a receiver is not always required to grant permission to those who apply for leave to sue its receiver, but that the discretion to refuse such permission when seasonably requested is exercised only when it is clear that the claim is without foundation.

We think that the claim here is of such a character. The plaintiff's request was not seasonably presented.

The final decree in the partition suit provided that: "Ordered, adjudged and decreed that Florida East Coast Railway Company, its successors and assigns be and it is hereby adjudged and decreed entitled to its right of way over, through and upon the said Miles or Hanson Grant, and the respective lots, tracts, pieces, or portions thereof, as hereinbefore specifically decreed to the several complainants and defendants, herein, as the same is now constructed, located, used, occupied and operated by the said Railway Company, defendant, over, through, and upon the same, to the extent in width as the same is now used, occupied, laid out, surveyed, and operated through the said lands by the said company, and as appear set apart and reserved to the said Railway Company by the Commissioners herein."

■ It also ordered that the plat made and filed by the commissioners in partition should be recorded in the office of the Clerk of the Circuit Court. This plat and this decree are a part of the public records of the District Court of the United States for the Southern District of Florida at Jacksonville, of which the Court below had the right to take judicial knowledge, and to consider, even if plaintiff is correct in her insistence that the report of the trustees on the Dunscombe claim, and other evidentiary matters filed with the Court by defendant, were improperly received and considered.

It appears from the report of the commissioners, their plat of the lands, and the partition decree of December 17, 1901, that not only did the railroad run over the right of way in question but the commissioners in allotting lands to the predecessors in title of plaintiff made the railroad right of way a boundry line of lots 2 and 3. The commissioners did not allot the lands within the right of way to plaintiff's predecessors in title but on the contrary recognized the rights of the railway therein, as did the Court in its final decree awarding the right of way over the lands to the Railway "to the extent in width as the same is now used, occupied, laid out, surveyed, and operated through the said lands by the said company, * * *."

■■ The Court not only may take judicial knowledge of its own records in a case relating to the title to identical subject matter in determining whether or not it will grant permission to sue, but it may also take into consideration the allegations and the exhibits tendered by the party who seeks permission to bring suit. Attached to the tendered complaint in the present case are two plats, one by the partition commissioners showing the recognition and location of the line of railroad, and the second an official and duly recorded map of Sewall's Point Land Company, drawn to scale, showing the location of said railroad right of way having a width, according to its scale of 100 feet. This map was a part of the public records relating to her claim of title and was recorded long before any conveyance to the plaintiff and furnished the designations by which her lots are described. The decree of the Court, the plats attached to the complaint, and the allegations of the complaint itself, were all appropriate for

the Court below to consider in passing upon petition for leave to sue, and these documents, of themselves, or without any evidence being introduced, reveal that the case of the plaintiff was without merit. It would, therefore, avail plaintiff nothing even if she is correct in her contention—which we do not here decide—that the Court should not make a summary disposition of a case in which it is necessary to consider extrinsic evidence in determining whether the case is or is not devoid of merit.

The Court in taking judicial knowledge of its own records can readily observe the following features in the final decree in partition rendered on the 17th day of December, 1901:

1. An express declaration that the Florida East Coast Railway was entitled to the right of way over the lots "to the extent in width as the same is now used, occupied, laid out, surveyed, and operated through the said lands."

2. An absence of any award of the lands within such right of way to appellant's predecessors in title, the Sewalls, but on the contrary a use of the limits of the right of way as the outside boundaries of the land awarded to such predecessors, from which it necessarily follows that Sewall's Point Land Company, having obtained no title to the right of way, could convey none to the husband of appellant.

In determining the width of the right of way then surveyed or in use we note that plaintiff's own exhibit, the official map or plat of Sewall's Point Land Company, shows that the right of way of the Railway was 100 feet in width when the plat was filed in 1913.

These further aspects are noteworthy:

■ (a) Sewall's Point Land Company's map or plat, as, for that matter, does every other plat put before the Court below, shows the right of way of the Railroad duly platted thereon. Since plaintiff acquired only the unplatted portion of said lots 3 and 4, it appears that she never had any deed to the right of way of the Railroad—same being a platted portion of said lots. It seems, therefore, from the decree, the plaintiff's allegations, and exhibits that Sewall's Point Land Company neither acquired nor conveyed any title to lands within the right of way of 100 feet.

■ (b) The decree of the Court in partition had jurisdiction of the owners, the land, the Railroad, and the subject matter, and its decree allotting to the Railroad the right of way, as surveyed and operated, was a final decree from which there was no appeal, and such decree cannot now be collaterally attacked.

■ (c) The deeds: from Sewall's Point Land Company to Carroll Dunscombe; from Dunscombe to Florida Growers, Inc., from Florida Growers, Inc., to plaintiff, were each made by a grantor out of possession and are, therefore, void, because livery of seizin cannot lawfully be made of lands which at the time of the execution of the deed were in the adverse possession of another. See Doe ex dem. Magruder v. Roe, 13 Fla. 602, Nelson v. Brush, 22 Fla. 374, Farrington v. Greer, 94 Fla. 457, 113 So. 722, Vincent v. Hines, 79 Fla. 564, 84 So. 614.

■ (d) The contention that the Railroad, having the power of eminent domain, cannot acquire title by adverse possession does not seem to be supported by Florida decisions. See Seaboard Air Line R. v. Atlantic Coast Line, 117 Fla. 810, 158 So. 459, and Florida Southern R. v. Loring, 5 Cir., 51 F. 932.

■ (e) Even though the owner of property taken for public use has the right to receive just compensation for such property, the owner may waive that constitutional right in the same manner as one who is entitled to a trial by jury under the Constitution may waive that right.

We think that if none of the extrinsic documents put in evidence by appellees had been received, it would, nevertheless, have clearly appeared that the plaintiff's case was without merit, and that the lower Court did not abuse its discretion in denying plaintiff the right to sue.

The motion of appellant to assess a portion of the costs against the appellees for an alleged padding of the record is overruled, and the order of the lower Court is

Affirmed.