[L. A. No. 2651. In Bank.—October 18, 1912.]

## TITLE INSURANCE AND TRUST COMPANY, Respondent, v. CALIFORNIA DEVELOPMENT COMPANY et al., Defendants. NEW LIVERPOOL SALT COMPANY, Appellant, BOAZ DUNCAN, Intervener and Respondent.

Receiver—Foreclosure of Mortgage—Insufficiency of Property to Discharge Mortgage Debt—Value of Property must be Shown.—In an action to foreclose a mortgage, the appointment of a receiver on the ground that the mortgaged property is probably insufficient to discharge the mortgage debt is not justified, if the only allegation in that connection is a mere averment, on information and belief, that the "property is probably insufficient to discharge the mortgage debt," without any showing of the value of the property, or of any facts indicating its value.

Id.—Right to Receiver in Action to Foreclose Mortgage—Impairment of Mortgage Security.—The right of a mortgagee to have a receiver take charge of the mortgaged property *pendente lite* is founded upon the proposition that such action is necessary in order to preserve or protect the interest of the mortgagee. His interest is the lien of his mortgage, and its extent is measured by the amount of the mortgaged debt for which the lien is security. Unless the security for the ultimate payment of the debt is in some way injured or impaired, he cannot be prejudiced.

Id.—Danger of Material Injury to Mortgaged Property—Effect of Injury on Value of Property.—In order to determine whether a receiver should be appointed *pendente lite* in such action, on the ground that the mortgaged property is in danger of being "materially injured," within the meaning of subdivision 2 of section 564 of the Code of Civil Procedure, it is necessary to consider the relative value of the property after the injury has been inflicted, and the amount of the debt, and a receiver should not be appointed, if the injury, though considerable in extent, will still leave enough of the property remaining intact to be ample security for the debt. Consequently, in applying for a receiver on such ground, the plaintiff must show, not only that the property mortgaged was in danger of material injury, but also that such injury would so depreciate its value that it would not thereafter afford adequate security for the payment of the mortgaged debt.

Id.—Injury to Part of Mortgaged Irrigation System.—Where the mortgaged property was of vast extent and consisted of several distinct things, amongst others of an extensive irrigation system, it was an abuse of discretion to appoint a receiver *pendente lite*,

upon a mere showing of danger of material injury to a part of such system of irrigation, where no showing was made as to either the extent, the present condition, or the values of the remaining portions of the mortgaged property.

ID.—EX PARTE APPLICATION FOR RECEIVER—UNDERTAKING BY SURETY COMPANY—APPROVAL BY COURT—EVIDENCE OF AGENT'S AUTHORITY —APPEAL.—In the absence of any evidence to the contrary, it will be presumed on appeal that persons purporting to act as agents of a surety company in the execution of an undertaking given upon the appointment of a receiver, as required by section 566 of the Code of Civil Procedure, and which was accepted and approved by the court, sufficiently established their authority by evidence presented to the trial court.

ID.—UNDERTAKING MUST RUN IN FAVOR OF ALL DEFENDANTS.—The undertaking required to be given by section 566 of the Code of Civil Procedure, if a receiver is appointed upon an *ex parte* application, should run in favor of each defendant in the action, and should be in such form that any defendant would have a right of action thereon if he is damaged by the appointment. If the undertaking given and approved by the court was in favor of only one of the defendants, the appointment of the receiver, so far as the interests of other defendants are concerned, was improperly made.

ID.—NEW UNDERTAKING FILED SUBSEQUENT TO APPOINTMENT OF RECEIVER — VALIDITY OF APPOINTMENT — RATIFICATION OF ORIGINAL UNDERTAKING.—Where the original undertaking given ran in favor of only one of the defendants, a new undertaking subsequently given in pursuance of an order of court, running to all the defendants and ratifying and confirming the original undertaking, operated to make valid the appointment of the receiver from the time of its filing, and to cure any defects in the manner of the execution of the original undertaking.

ID.—REVERSAL OF ORDER APPOINTING RECEIVER—APPEAL BY SINGLE DEFENDANT—EFFECT OF REVERSAL.—The reversal of an order appointing a receiver in an action to foreclose a mortgage against several defendants, upon the appeal of a single defendant who had neither the possession nor the right of possession of any of the mortgaged property, and whose only interest therein was that of a subsequent encumbrancer or holder of some of the bonds secured by the mortgage, did not affect the validity of the order as to the other parties to the action. The effect of the reversal would only inure to the defendant appealing, so as to give it the right of participation in the proceeds of any foreclosure sale in preference to the costs and expenses occasioned by the receivership.

APPEAL from an order of the Superior Court of Imperial County appointing a receiver.  Franklin J. Cole, Judge.

The facts are stated in the opinion of the court.

Page, McCutchen & Knight, and Page, McCutchen, Knight & Olney, for Appellant.

O'Melveny, Stevens & Millikin, Lee C. Gates, and Walter K. Fuller, for Plaintiff and Respondent.

J. W. McKinley, for Receiver.

THE COURT.—The appeal is from an order appointing a receiver. It is taken by the New Liverpool Salt Company alone.

The action was begun to foreclose the lien of a mortgage or deed of trust made by the California Development Company, to secure the payment of certain bonds issued by it. The order appointing the receiver was made *ex parte,* and was founded on the complaint and the affidavit of one Henry L. Lyon.

We find it necessary to consider but two objections urged against the regularity of the order: 1. That the court abused its discretion in making the order upon the facts shown; and 2. That the order is void, as to the New Liverpool Salt Company, because it was made *ex parte,* without exacting any undertaking for the protection of that company, as required by section 566 of the Code of Civil Procedure.

1. We think the facts shown, though not sufficiently lacking in merit to make the order void for want of jurisdiction, were of so little force and effect that we must declare the making of the order an abuse of discretion. The plaintiff attempted to show the causes for appointing receivers set forth in subdivision 2 of section 564 of the Code of Civil Procedure. These are: 1. "That the mortgaged property is in danger of being lost, removed, or materially injured"; and 2, "That the property is probably insufficient to discharge the mortgage debt."

The only attempt to establish the second ground mentioned consisted of an allegation in the complaint stating "that as plaintiff is informed and believes and therefore avers, the aforementioned property is probably insufficient to discharge the mortgage debt aforesaid." Neither the value of the prop-

erty, nor any facts indicating its value, are set forth in the complaint or in the affidavit. The decision in *Bank of Woodland* v. *Stephens,* 144 Cal. 660, [79 Pac. 379], is directly to the point that this is not a sufficient allegation of fact to justify the appointment of a receiver under this clause of the section.

The showing under the first clause is also insufficient. The right of a mortgagee to have a receiver take charge of the mortgaged property during the pendency of the action is founded upon the proposition that such action is necessary in order to preserve or protect the interest of the mortgagee. His only interest is the lien of his mortgage, and its extent is measured by the amount of the debt for which the lien is security. The debt is the substantial thing; unless the security for its ultimate payment is in some way endangered or impaired, he cannot be prejudiced. The purpose of the subdivision in question is to provide the means for his protection against such danger. The second clause, which we have just noticed, is provided to enable him, when his debt is matured, to obtain and apply to its payment the rents, issues, and profits of the property, and it expressly declares that this may be done only when the mortgage is due, and when it appears probable that the property mortgaged is insufficient to pay the debt. The first clause covers different contingencies and dangers, but its purpose is the same—namely, to preserve sufficient of the security to discharge the debt. It covers the contingencies of loss, removal, and material injury. If all the mortgaged property is lost or removed from the jurisdiction the entire security is gone, and the prejudice to the rights of the mortgagee necessarily ensues, for he is entitled to have such property remain accessible, whatever its value and although it may far exceed the mortgage debt. But if the danger is only that it may be "materially injured," the relative value of the property, after such injury has been inflicted, and the amount of the debt, must be considered in order to determine whether or not the mortgagee's interests require the court to deprive the mortgagor of his lawful possession of his own property. If the injury though considerable in extent, will still leave enough of the property remaining intact to be ample security for the debt, the court should not interfere. In such a case the mortgagee can suffer no

injury to his interests. It was, therefore, necessary for the plaintiff, in applying for a receiver, to show, not only that the property mortgaged was in danger of material injury, but also that such injury would so depreciate its value that it would not thereafter afford adequate security for the payment of the outstanding bonds.

The complaint shows that the bonds issued and unpaid amount to $477,920, with interest from July 1, 1908. The mortgaged property is of vast extent. It consists of 318 acres of land in Imperial County on the Colorado River, known as Hanlon's Heading; a large canal, then in course of construction, to carry the water of the Colorado River from said heading to a point in California over fifty miles distant, to be there sold to the Imperial Water Company and others, the said water company taking four hundred thousand acre feet per year at the yearly rate of fifty cents per acre foot; a right to take water from said river and also from Volcano Lake in Mexico to supply such purchasers; practically all of the capital stock of a subsidiary company organized under Mexican laws to hold the property and conduct the necessary operations of the system in Mexico, which said Mexican company also holds title to one hundred thousand acres of land in Mexico; the right to sell the entire capital stock of said Imperial Water Company at $8.75 a share and appropriate the proceeds to its own use, said company having a capital stock of one hundred thousand shares; also the easements pertaining to said water system, all buildings, structures, tools, and personal property used in connection therewith, and all lands, rights, franchises, and property which the Development Company should thereafter acquire. This mortgage, or deed of trust, was made in 1900. The suit was begun on December 13, 1909. Whether or not the proposed water system had been completed, or how far it has been constructed does not appear except by inference. Nothing is said as to the value of this property, or any part thereof, nor as to the extent of the canal.

The only facts tending to show the danger of material injury were those stated in the affidavit of Lyon. From this it appears that somewhere on the Development Company's canal there is a place called "Sharp's Heading," that the "structures" at that heading "are wooden and are old and

weak; and that there is imminent danger that said structures may be washed out at any time," unless the same are further protected; that "the only way for the protection of said canal and water system" is to put in new and permanent structures and collateral works, all of which would cost more than $250,000. The affidavit then proceeds as follows:

"That said structures at Sharp's Heading are the only suitable place for the handling or putting of the water of said canal into said irrigation system; that if the same be washed out and destroyed, the irrigation system of said California Development Company would be in a condition that it would be useless and that water could not be supplied to the Imperial Valley for many months because it would take several months to reconstruct the said structures. That there are other points in said system of irrigation works that are of temporary character of construction; that the same are in constant need of repair; that through flood or other natural causes the same are liable to displacement and destruction, and the effect thereof would deprive irrigators of water and residents of domestic water and materially injure the property. That the only way for the protection of said canal and water system is the construction of permanent and new structures costing, with all collaterals, over $500,000.00."

This shows that the new structures required to make the system secure against washouts would cost five hundred thousand dollars. But it does not state the value of the existing structures, nor the value of the entire system, nor the value of the other property covered by the mortgage, nor how much that value would be reduced if the apprehended washouts and injuries actually occurred. The injuries from washouts would doubtless be substantial both in value and in character. But neither the extent, the present condition, nor the values of the remaining portions of a system of irrigation works which is probably larger than any other in the state, or of the property of the Mexican company, appears, and it may well be that, even with the injuries accomplished, the property remaining will far exceed the amount due on the bonds and will constitute abundant security for the payment thereof. If so, there would be no necessity for the appointment of a receiver to incur additional expense to keep the system in operation. The water users would be interested in having

that done for their protection, but the bondholders, being otherwise fully secured, would have no interest sufficient to justify such action. The decision of such matters is very largely within the discretion of the lower court. This court should be slow to interfere with an exercise thereof. But where the showing of apprehended injury fails to make it appear that the mortgagee's or bondholders' interests and security will be jeopardized, it is a clear abuse of discretion to make such an order.

2. Before the order appointing the receiver was made, the plaintiff, under the direction of the court, procured and filed an undertaking of the United States Fidelity and Guaranty Company in the sum of three thousand dollars, in form as provided in section 566 of the Code of Civil Procedure. This undertaking was dated December 13, 1909, it was signed by Catesby C. Thom, as attorney-in-fact for the Guaranty Company, and it was acknowledged by him, as such, on that day, in Los Angeles County, and was filed on the same day in Imperial County. At the time it was so signed, the amount of the obligation was not inserted therein. Before it was filed the words "three thousand dollars" were inserted in the appropriate place by a person authorized by said Thom to do so, the same being made at the courthouse in Imperial County, in the absence of said Thom. The person who wrote these words presented to the court written evidence of his authority to do so, and thereupon the undertaking was accepted and approved by the court and the order was made appointing the receiver.

These facts do not invalidate the undertaking. We have not before us the power of attorney whereby Thom was made the attorney-in-fact of the Guaranty Company, nor the instrument purporting to authorize the other person, in his absence, to write in the amount. Both were sufficient to satisfy the court below of the validity of the undertaking. As error is not presumed, but must be affirmatively shown in order to warrant a reversal of the action of the lower tribunal, and no such showing is made, the conclusion of the court on these points must stand. It is legally possible that Thom was empowered by the Guaranty Company to substitute another person as agent to write in the words aforesaid and, in the absence of any showing to the contrary, it is to be presumed

that the evidence presented to the court below established this authority.

The undertaking was that the said surety "does hereby undertake and promise to and with the *defendant,* California Development Company," that plaintiff would "pay to *said defendant* all damages it may sustain," etc. It did not purport to run to or in favor of any other defendant. Section 566 of the Code of Civil Procedure, provides as follows: "If a receiver is appointed upon an *ex parte* application, the court, before making the order, must require from the applicant an undertaking, with sufficient sureties, in an amount to be fixed by the court, to the effect that the applicant will pay to the defendant all damages he may sustain by reason of the appointment of such receiver and the entry by him upon his duties, in case the applicant shall have procured such appointment wrongfully, maliciously, or without sufficient cause; and the court may, in its discretion, at any time after said appointment, require an additional undertaking."

The purpose of this clause was to provide security to each defendant for the recovery of any damages he might suffer from the appointment of a receiver procured wrongfully, maliciously, or without sufficient cause. The undertaking should therefore be in such form that any defendant would have a right of action thereon if he is damaged by the appointment. Consequently, the approval of the undertaking running to the California Development Company alone was irregular, and the effect is that the appointment, so far as the interests of the New Liverpool Salt Company are concerned, was improperly made.

It appears that subsequently, on March 24, 1910, this defect in the undertaking was called to the attention of the court below and that thereupon it ordered the plaintiff to procure and file a new undertaking in the same penal sum, running to all the defendants, ratifying and confirming the original undertaking, and providing that the liability on the undertaking last filed should relate back to and cover all damages caused by the appointment from the time it was made. This was immediately done. It is unnecessary to say whether or not this undertaking operated to make the appointment of the receiver valid from the beginning. At all events it would operate to make it valid from the time of the filing of

the second undertaking, and it would also cure any defects in the manner of the execution of the original. undertaking.

As the receivership is still pending in the court below and the receiver is, presumably, in charge of the property and operating it for the benefit of the other parties, it is proper to consider the effect of a reversal of the order appointing him when such reversal is upon the appeal of a single defendant. The New Liverpool Salt Company was not a necessary party to the action. The only interest it has, so far as the record shows, is its claim that it has some right or interest in the premises described in the deed of trust, which interest or right is subsequent and subordinate to the lien created by said deed. It is not claimed or suggested that it has either the possession or the right of possession of any of the said property. At the time the action was begun the California Development Company was in possession. A receiver to take charge and control of the property could, therefore, have been appointed without making the Salt Company a party to the action, or giving it any notice thereof. The result of the omission to do so would be that its rights or interests would not be bound for any costs or expenses occasioned by the appointment of the receiver or his proceedings thereunder. If, as appears to be understood, it is a holder of some of the bonds or of a subsequent encumbrance on a part of the property, it would have the right to have such encumbrance or bonds paid out of the proceeds of any foreclosure sale in preference to the costs and expenses occasioned by the receivership. The reversal of the order upon this appeal upon the grounds above mentioned will therefore, not affect its validity as to the other parties to the action, or have any effect upon the proceedings other than as above stated. It will inure only to the benefit of the said Salt Company as its interests may appear.

The order is reversed, in so far as it affects the New Liverpool Salt Company, but not as to the other parties.

Rehearing denied.