[Civ. No. 3483.   First Appellate District, Division Two.—December 22, 1920.]

MERCANTILE TRUST COMPANY OF SAN FRANCISCO (a Corporation), Plaintiff, v. SUNSET ROAD OIL COMPANY (a Corporation), et al., Defendants.

JOHN DANIEL, Receiver, Petitioner and Respondent, v. R. H. CROSS, Appellant.

[1] MORTGAGE—FORECLOSURE—LITIGATION OF ADVERSE TITLE.—While it is generally the rule that claims adverse to both the mortgagor and mortgagee cannot be litigated in a foreclosure suit, if the adverse claimants subject themselves to the jurisdiction of the court in the foreclosure suit, it being before a court of equity, complete justice may be done.

[2] ID. — COLLATERAL PROCEEDING — EXECUTION SALE PENDING FORE-CLOSURE—JURISDICTION.—In an action for the foreclosure of a mortgage, the court was without power in a collateral proceeding instituted by the receiver in the action to annul an execution sale of the property in a partition suit or to restrain the purchaser, who was not a party to the foreclosure action, from selling or dealing with his claim of title acquired while the property was *sub judice*, but had the power to restrain the purchaser from interfering with the possession of the receiver.

APPEAL from an order of the Superior Court of Kern County vacating an execution sale and granting an injunction. Howard A. Peairs, Judge. Reversed in part; affirmed in part.

The facts are stated in the opinion of the court.

Arthur H. Brandt and R. H. Cross, *in pro. per.*, for Appellant.

George E. Whitaker for Respondent.

LANGDON, P. J.—This is an appeal from an order by the superior court of the county of Kern in the action of *Mercantile Trust Co. of San Francisco* v. *Sunset Road Oil Co.*, vacating, annulling, and setting aside an execution sale of certain real property at which R. H. Cross, the appellant, was the purchaser; and permanently enjoining him from selling, mortgaging, pledging, hypothecating, or in any other way disposing of, or attempting to dispose of, the property, and from interfering or attempting to interfere with the possession of the receiver thereof. The proceeding which terminated in this order was a collateral proceeding in that action, and it is necessary to make a somewhat extended statement of the facts because of their complexity.

On the eleventh day of March, 1911, the Mercantile Trust Company of San Francisco commenced an action in the superior court of the county of Kern against the Sunset Road Oil Company and others, for the purpose of foreclosing a mortgage given by the Sunset Road Oil Company to the Mercantile Trust Company of San Francisco as security for a bonded indebtedness of $2,000,000. In that action, John Daniel was, on the thirteenth day of March, 1911, appointed receiver.

On the twentieth day of December, 1916, the receiver filed in this foreclosure action a petition praying for an order adjudging the appellant here, who was not a party to that action, guilty of contempt of court, and for an order permanently enjoining him from interfering or attempting to interfere with the possession of the receiver of certain real property therein described, and from in any manner disposing or attempting to dispose of it. As a basis for such an order, the receiver alleged that appellant had been the attorney for the plaintiffs in a certain partition action entitled *Anita M. Dewey and D. W. Hobson* v. *H. A. Blodget, Sunset Road Oil Co., and Mercantile Trust Co. of San Francisco et al.*, which had been commenced in the superior court of Kern County on April 26, 1910; that a final decree had been made and entered in that action on the sixth day of August, 1913; that on the tenth day of December, 1913, appellant, acting as the attorney for the plaintiffs in that action, had caused an execution to be issued to the sheriff of the county of Kern, directing him to levy upon and sell under execution certain real property belonging to the Sunset Road Oil Company, and which had been set aside to it in that action; that this execution was issued for the purpose of enforcing and satisfying a judgment for costs which had been fixed and imposed as a lien on that property by the final decree in the action; that a sale on such execution was had on January 23, 1914, at which appellant became the purchaser; that a certificate of sale had been issued to him; that, thereafter, and on the seventeenth day of May, 1915, he had received a sheriff's deed; that said real property so levied upon and sold was a portion of the property covered by the mortgage given by the Sunset Road Oil Company to the Mercantile Trust Company, and a part of the subject matter of the foreclosure action in which petitioner had been appointed receiver; that upon his appointment he had entered into possession of said property; that neither the plaintiffs in the partition action nor R. H. Cross had obtained leave from the court in the action of *Mercantile Trust Co. of San Francisco* v. *Sunset Road Oil Co. et al.* to issue said execution, and that the same was issued without the knowledge and without the authority of the court having jurisdiction of that action; that appellant, acting under the sheriff's deed, was claiming to own said lands, and

was endeavoring to sell, mortgage, pledge, hypothecate, or otherwise dispose of them, and that he was interfering with the possession of the receiver and was threatening to dispossess him.

Upon the filing of this petition the court issued its order requiring appellant to appear before it on the thirtieth day of December, 1916, to show cause why he should not be adjudged guilty of contempt and permanently enjoined and restrained, as prayed for by the petitioner, and, without requiring any bond on the part of the petitioner, restrained appellant from interfering or attempting to interfere with his possession and from selling or otherwise disposing of the property. On January 22, 1917, to which date the hearing had been continued, appellant specially appearing for that purpose, moved that the petition and all proceedings on the receiver's application be dismissed on the ground that the court was without jurisdiction, and that any order made in conformity with the prayer of the petition would be in excess of the power of the court. Reserving his rights under his motion to dismiss, appellant then filed a demurrer and answer to the petition. The motion to dismiss was taken under submission and was thereafter denied and the demurrer to the petition was overruled. The court, by its order, kept the restraining order in force until a final hearing should be had on the petition and order to show cause.

Upon the denial of his motion to dismiss, appellant petitioned the supreme court for a writ of prohibition to be directed to the lower court restraining it from further proceedings on the petition. An alternative writ was issued, but on the day before the writ was made returnable, the lower court, upon the *ex parte* application of the receiver, vacated and set aside the order previously made, and entered a new order *nunc pro tunc* as of February 26, 1917, the date of the original order. By this last order, appellant's motion to dismiss was in part granted and the proceeding, so far as it sought a judgment of contempt against him, dismissed. The order restraining him from interfering with the possession of the receiver and from selling or otherwise disposing of the property was kept in force, however, and he was required to show cause why a permanent injunction should not issue as prayed. Thereafter, the judge of the lower court filed a return to appellant's petition for a writ of

prohibition, in which he set forth his action in vacating the prior order and entering the new order *nunc pro tunc*. Thereupon, the supreme court, holding that an appeal would lie from any injunction which might be issued in said proceeding, discharged the alternative writ.

On June 21, 1917, appellant served and filed his affidavit and motion based thereon, for an order transferring the proceeding to another department of the court, or that another judge be called in to hear it on the ground that he could not have a fair and impartial trial because of the bias and prejudice of the judge before whom it was then pending. The motion was noticed for the twenty-ninth day of June, 1917, to which date, by consent, the hearing had been continued. On that date, over the objection of appellant that they came too late, counter-affidavits were filed and the motion was denied.

Upon the denial of the said motion, petitioner, without having given any previous notice thereof to appellant, or to his attorney, and without having served his proposed amendments, moved the court for leave to file an amended petition and requested a new order to show cause and a continuance. Over appellant's objection, this motion was granted. The amended petition was accordingly filed, in which all allegations bearing upon the charge of contempt were omitted. Anita M. Yeo (formerly Anita M. Dewey) and B. W. Hobson were joined as parties and the proceeding converted from one of contempt to a proceeding to vacate and set aside the execution sale which had been had in the case of *Dewey and Hobson* v. *Blodget et al.* The restraining order which had been issued on the filing of the original petition was dissolved, and the court immediately issued a new restraining order in the same form. Appellant demanded the filing of a bond by the petitioner before the issuance of the restraining order, but such bond was not required by the court.

Upon the hearing of the amended petition of the receiver, appellant renewed his motion to dismiss and, subject to such motion, filed a demurrer and an answer. The rulings on the motion to dismiss and the demurrer were taken under advisement by the court and a hearing upon the amended petition was had. Appellant then formally requested and demanded of the court that in the event that the court

should hold that the petitioner was entitled to question the execution sale in the case of *Dewey* v. *Blodget* in a summary proceeding, and that on the merits he was entitled to an order granting his petition, that an order granting his petition be made conditional upon the receiver paying to the appellant the amount that was paid by him for the purchase of the property, and that the said R. H. Cross, the appellant here, have judgment for the amount stated by the receiver to have been tendered Mr. Cross, and that the court order and direct the receiver to deposit said sum with the clerk of the court for the use and benefit of Mr. Cross, or to retain it in his custody until the final determination of the proceeding.

The matter was submitted, and the court later made its findings and entered the order from which this appeal is taken. By this order, the issuance of the writ of execution in the case of *Dewey and Hobson* v. *Blodget*, the sale thereunder and the certificate of sale and deed delivered to appellant were annulled, vacated, and set aside; he was permanently enjoined from selling, mortgaging, pledging, hypothecating, or in any other manner disposing of said property or attempting to dispose of it, and was permanently restrained from interfering or attempting to interfere with the possession of the receiver thereof.

The appellant has filed most learned and comprehensive briefs, in which he makes many objections to the action of the trial court. We think, however, it will be necessary to discuss only his main objection, which is that the court in which the foreclosure proceedings were pending could not, on the application of its receiver, appointed in the foreclosure suit, in a summary proceeding, annul and vacate all proceedings on execution taken in another and distinct action, without in any manner preserving or protecting appellant's rights, and cannot strip the purchaser at said execution sale of every right and incident of ownership where no fraud has been charged or proven.

It seems necessary, at this point, to consider somewhat in detail the facts with relation to the partition suit, in which action the execution under which sale was made to appellant was issued. The facts with reference to this matter are uncontradicted, and many of them appear in the amended petition of the receiver and have heretofore been

referred to. On the twenty-sixth day of April, 1910, Anita N. Dewey (whose name was subsequently changed to Anita M. Yeo) and D. W. Hobson commenced an action in the superior court of the county of Kern against H. A. Blodget, Sunset Road Oil Company, Mercantile Trust Company of San Francisco, Union Oil Company, Sunset Railroad Company et al. This action was brought for the purpose of establishing in the plaintiffs a two twenty-fifths undivided interest in certain real property situated in the county of Kern, comprising about 480 acres, and for a partition of this property among the parties, according to their respective interests. At the time of the commencement of this action a *lis pendens* was filed in the office of the county recorder of Kern County. The action was assigned to department one of the court and was there determined. The cause proceeded regularly and on June 5, 1912, an interlocutory decree was made and entered by which it was adjudged that the plaintiffs were the owners in fee simple absolute, share and share alike, of an undivided two twenty-fifths interest in the property, and that the defendant Sunset Road Oil Company was the owner in fee simple of an undivided twenty-three twenty-fifths interest; and that the interest of the Sunset Road Oil Company was subject to a bonded indebtedness of that company in the sum of $2,000,000, evidenced by certain bonds secured by a deed of trust to Mercantile Trust Company of San Francisco, dated July 15, 1905.

The referees appointed by the interlocutory decree in partition duly made partition and filed their report, which report was confirmed and final judgment entered. By this final decree, a designated thirty-six acres were partitioned and set aside to the plaintiffs, free and clear of all encumbrances, and the balance of said land was set aside to Sunset Road Oil Company, subject to the mortgage of Mercantile Trust Company. The portion of the decree from which appellant's right flows contains a provision for the recovery by plaintiffs of costs and attorneys' fees, and the amount of such costs and fees is "adjudged to be a lien upon the respective interests of the parties hereto in the following proportions, to wit: That two twenty-fifths part thereof be a lien upon the said lands set apart to plaintiffs as aforesaid, and that twenty-three twenty-fifths part thereof

be a lien upon the lands set apart to defendant Sunset Road Oil Company, and that said twenty-three twenty-fifths of said sum be and it is hereby decreed and adjudged to be a lien on said lands prior to the said mortgages and liens hereinbefore mentioned and described.''

After the commencement of the partition suit and on March 11, 1911, the foreclosure action hereinbefore mentioned was commenced by Mercantile Trust Company. The plaintiffs in the partition suit were not made parties to this foreclosure action. The foreclosure action was assigned to department one of the superior court (the same department in which the partition suit had been tried), but was later transferred to another department. On March 13, 1911, John Daniel, the petitioner here, was appointed receiver in said foreclosure action. By the order appointing him, he was empowered and directed to demand, collect, and receive all personal property described in the deed of trust or mortgage, all rents due and unpaid or thereafter to become due, and all issues, income, and profits from the premises, and to keep the buildings and other personal property insured and to pay the rentals, taxes, and assessments which might accrue. The 480 acres, the subject matter of the partition suit (and which were then held in undivided ownership by Anita M. Dewey, D. W. Hobson, and Sunset Road Oil Company), was one of the pieces which were included in the mortgage to the Mercantile Trust Company, and was a portion of the subject matter of the foreclosure suit. Though the partition suit was then undetermined, the receiver did not intervene therein.

Mr. Cross, the appellant, was the attorney for Anita M. Dewey and D. W. Hobson in the partition suit. As such, during the pendency of the partition suit, he had considerable correspondence, which appears in the record, with the attorney for the receiver with reference to an amicable partition of the property and other matters in connection with such partition suit. Subsequent to the entry of the final decree in the partition suit, appellant, in the performance of his duty as attorney for the plaintiffs in that action, sought to effect collection of the judgment for costs which had been made a first lien upon the property involved in the partition suit. He called upon the trust officer of the Mercantile Trust Company and requested payment of the

amount of the judgment. The Trust Company advised him that it had advanced in the case all money that it was going to advance, and that it did not know where he could procure the amount to satisfy the judgment. No further action was taken in the matter of the execution, however, until November, and at that time appellant secured a writ of execution and delivered the same to the sheriff for levy and sale. Appellant immediately notified the Trust Company of the issuance of execution and of the date of the sale. The sale was subsequently held on January 13, 1914, and there being no other bidders, appellant purchased the property for $1,307.70. A sheriff's certificate was issued to him, and the sheriff returned the writ satisfied. A year having elapsed after the sale, and no redemption having been made, the sheriff, on May 13, 1915, delivered to appellant a sheriff's deed transferring the property to him, which deed was duly recorded. It was not until three years after the delivery of the sheriff's deed that the receiver in the foreclosure action filed his petition herein.

It is, of course, well settled that in a foreclosure proceeding the court cannot try the question of the title of one claiming adversely to both the mortgagor and mortgagee. (*Murray* v. *Etchepare,* 129 Cal. 318, [61 Pac. 930]; *Cady* v. *Purser,* 131 Cal. 552, [82 Am. St. Rep. 391, 63 Pac. 844].) This question is one to be settled in another action after the adjustment of the relative rights of the mortgagor and mortgagee in the foreclosure proceeding. (*Murray* v. *Etchepare, supra.*) The order in the present case annulling the deed to appellant cannot be justified, therefore, upon the ground of an adjudication of title as between the appellant and the mortgagor and those claiming under it, because the lower court was powerless to make such an adjudication. But, in reality, the present case does not present a situation where the court attempted to try title as between the mortgagor and one claiming adversely. The action of the lower court here prevented the appellant from acquiring any title to the property, regardless of the force and effect of such title against either or both the mortgagor or mortgagee. The court in the foreclosure proceeding did not inquire into the merits of appellant's title as against the mortgagor or mortgagee; it did not try the question of title, but simply set aside whatever title or evidence of title

appellant had, without any adjudication upon the merits, but, apparently, solely upon the ground that the acquisition of title by the appellant, whatever its value, without leave of the court appointing the receiver, was an interference with the possession of the receiver, and, therefore, might be annulled regardless of the equities between the parties. In the cases last cited, the court said that the title of one claiming adversely to both the mortgagor and mortgagee must be passed upon in another and distinct action; but in the present case, the action of the lower court in divesting the appellant of his title would preclude him from this right of an independent determination of the merits of his claim. He has nothing upon which to found a claim in an independent action, having been stripped of all his right, title, and interest in the property.

However, respondent does not maintain that the trial court could in a foreclosure proceeding settle adverse claims to the property, but seeks to sustain this order upon the theory that regardless of the ultimate rights of the appellant or the value of the title which he had acquired at the execution sale, he could not sell under execution property in the hands of the receiver for the reason that such a sale would be an interference with the possession of said receiver which the appointing court would enjoin unless effected with the consent of said court. It is contended that this action would be taken by the court regardless of what might be the rights of the execution debtor after the foreclosure proceedings had been terminated; that regardless of the general rule limiting the power of courts in foreclosure actions, any court appointing a receiver has power to do any and everything that is required to protect the possession of its receiver of the property consigned to his care, and that the action of the court in annulling the deed in the present case was the exercise of a power necessarily incident to the protection of the possession of its receiver; that the possession of the receiver was interfered with by the execution sale and the vacating of the deed was a necessary and proper means to prevent such interference.

Appellant contends that the court in the foreclosure proceeding was without power or jurisdiction to annul the deed to him as a general proposition of law; that if such power was necessarily incident to its larger power to protect the

possession of its receiver, then such incidental power would only come into being when the possession of the receiver was being interfered with, and that a sale under execution is not an interference with such possession.

There is, of course, no dispute between the parties as to the general principles of law applicable in cases of receiverships—such as the nature of a receiver, his relation to the parties, and the power of the court over him, or the fact that he is entitled to be protected in his possession of the property entrusted to his management and control. There is, as we shall discuss later, no substantial evidence in the present case of any actual interference with the possession of the receiver, and the first question presented, therefore, is whether or not a sale under execution, by a prior lienor, without the permission of the court appointing the receiver, is, of itself, such an interference with the possession of a receiver in a foreclosure proceeding as to warrant the making of the order appealed from.

In an action for the foreclosure of a mortgage, the holders of paramount liens are neither necessary nor proper parties, the action being designed merely to cut off subsequent liens, and no portion of the proceeds of the foreclosure suit can be applied to the payment of such prior liens. (1 Wiltsie on Mortgage Foreclosure, sec. 188, p. 266; 2 Jones on Mortgages, sec. 1439; *Beronio* v. *Ventura Lumber Co.,* 129 Cal. 237, [79 Am. St. Rep. 118, 61 Pac. 958].) The purpose of the appointment of a receiver in such an action is that he may take charge of the mortgaged property during the pendency of the action where it appears that the property is in danger of being lost or materially injured, and the property is probably insufficient to discharge the mortgage debt. (Sec. 564, Code Civ. Proc.; *Title Ins. Co.* v. *California Dev. Co.,* 164 Cal. 58, [127 Pac. 502].) From the nature of a foreclosure proceeding, and the duties of the receiver appointed therein, it is apparent that a transfer of the legal title does not interfere with the possession of the receiver. "A receiver has no title to the property, and that is all that is affected or changed by a sale." (High on Receivers, sec. 5; *Hickox* v. *Holladay,* 29 Fed. 226, 234.) A mere conveyance of the legal title to the property can have no effect upon the possession of the receiver nor embarrass him in carrying out

his duties with relation to the same. (*Klauber* v. *San Diego Street Car Co.,* 95 Cal. 353, [30 Pac. 555]; *Petaluma Savings Bank* v. *Superior Court,* 111 Cal. 500, [44 Pac. 177].)

For if the sale is under a lien subsequent to the lien for the protection of which the receiver is in possession of the property, then the sale is made subject to the prior mortgage and the possession of the receiver. If the sale is under a lien which is paramount to that under which the receiver was appointed, then this paramount right is one which could not in any way be curtailed by the foreclosure proceedings under the subsequent lien or the appointment of a receiver therein. The legal title and the right to the possession of the property may, of course, exist simultaneously in different persons, and the purchaser at the execution sale would purchase subject to the temporary possession of the receiver just as he would purchase subject to the possession of a lessee were there one in possession of the property. It is to be observed that no injustice can be caused by the operation of such a rule, for the subsequent lienor in whose interest the receiver is holding possession has the right, under the code, to redeem from any sale made in satisfaction of a prior lien. He is a redemptioner, and as such fully protected. Because he fails to avail himself of this right does not entitle him to curtail the rights of the prior lienor. The mortgagee may proceed with his remedy against the mortgagor, and the purchaser at the foreclosure sale would succeed to all rights of the mortgagor in the property. The question of title as between such purchaser and one in the position of the appellant here is, then, one which remains judicially undetermined. It is not a matter properly before the court in the foreclosure proceedings, nor before this court here, and it cannot be foreclosed and settled in advance against the appellant here by the court in the foreclosure proceedings in annulling the deed to appellant.

It is admitted by appellant that in a certain class of cases, such as creditors' bills, insolvency proceedings, and the like, where a fund has been sequestered for the benefit of all creditors and is being administered by the court for all claimants who may come in, a levy and sale on execution against real property, without leave of court, is of no effect. But it is maintained that this is not because such levy would interfere with the possession of the receiver, but because the whole estate is

being administered for the benefit of all creditors who may
care to come in, and the proceedings involve a sequestration
of all assets.   On the other hand, it is pointed out that in
receiverships such as those incidental to a divorce proceeding
or mortgage foreclosure, which are for the sole benefit of
the plaintiff and for his further security, and in actions over
which he has exclusive control, the property is not seques-
tered for the benefit of creditors, and in such cases it is only
an actual interference with the possession of the receiver
which will be enjoined by the court, and that a sale under
execution by one having a paramount right to the plaintiff
in the action in which the receiver is appointed will be up-
held.   Whatever confusion or doubt may exist upon this
question in other jurisdictions, we are of the opinion that
this distinction is clearly made by the cases in this state.
(*Adams* v. *Woods,* 7 Cal. 187; Id., 8 Cal. 152, [68 Am. Dec.
313]; Id., 9 Cal. 24; *Petaluma Sav. Bank* v. *Superior Court,*
111 Cal. 488, [44 Pac. 177]; *Klauber* v. *San Diego Street
Ry. Co.,* 95 Cal. 353, [30 Pac. 555].)   Also, in the case of
*DeForrest* v. *Coffey,* 154 Cal. 444, [98 Pac. 27], the distinc-
tion claimed by appellant is clearly recognized, where it is
said: "A receiver in a divorce case only conserves the prop-
erty of the husband for the purpose of securing the wife
in her claim to alimony.   He has nothing to do with claims
of the creditors of the husband.   In the case cited (*Peta-
luma Sav. Bank* v. *Superior Court, supra*) no question of
permission to sue the receiver was involved.   No such appli-
cation could have been made, as there was no suit to be
brought against him and the enforcement of the lien of the
judgment obtained by the bank could not at all physically
disturb the possession of the receiver. *The bank was en-
forcing a pure, fixed, legal right, the exercise of which it
was held, the court appointing the receiver could not control.
But in an insolvency proceeding, the court sequesters the
estate of the insolvent and its receiver holds it for the benefit
of all the creditors.* It has plenary power over the assets
of the estate and one who asserts a claim against them must
not only apply for permission to do so, but under the au-
thorities it is discretionary with the court to reserve to itself
the determination of the validity of the claim, or to permit
it to be litigated in some other competent tribunal, and as
far as the nature of the claim asserted here is concerned,

the opinion in the Petaluma bank case contains nothing contrary to the general rule as established by the authorities to which we have heretofore referred.''

Respondent contends that a receivership in a mortgage foreclosure action is analogous to a receivership in insolvency, and not to a receivership in a divorce action. In so far as it is analogous to either, it appears to us, in its scope and purpose and legal effect, to be more nearly like the provisional remedy in a divorce action. It is not a sequestration of the assets of the defendant, but a mere administration of the assets covered by the mortgage for the sole and exclusive benefit of the mortgagor and mortgagee. It seeks not to protect other creditors and in a foreclosure suit the rights of prior lienors cannot be barred. The foreclosure suit is under the control of the mortgagor—the plaintiff— and may be dismissed by him at pleasure without reference to the rights of any other creditor. In a divorce proceeding, a receiver administers the assets of the defendant merely to conserve the same to satisfy a possible judgment for alimony, but the rights of those having prior claims cannot be barred or affected. Other creditors are not protected in such proceedings and cannot, therefore, be deprived of their legal rights by such proceedings.

We are, therefore, of the opinion that, both upon reason and authority, there is a clear distinction between a receivership in a liquidation proceeding, and one which is but a provisional remedy for the sole and exclusive benefit of the plaintiff; and we are also of the opinion that the receivership in the present case falls within the latter class. This being true, and a sale under execution not being an interference with the possession of the receiver in the foreclosure action, the order of the court in that action annulling the deed to appellant and enjoining him from selling, mortgaging, pledging, or hypothecating or in any other way disposing of, or attempting to dispose of, the said real property was erroneous.

However, in addition to said last-mentioned provisions of the decree, there was a provision permanently restraining and enjoining the appellant from interfering with the possession of the receiver in and to said real property. This portion of the decree was based upon the finding that the appellant was ''interfering with the possession of the re-

ceiver in said lands, and is threatening to dispossess said receiver." Appellant attacks this finding as unsupported by the evidence. In view of the fact that the receiver himself testified positively that his possession had not been interfered with in any way since his appointment, it is somewhat difficult to understand upon what evidence the trial court predicated this finding, unless it be the testimony of the appellant that after his purchase at the execution sale, he had driven over the property and had spoken to a man who was living in a house located thereon, and had told him if he paid any rent for the house to pay it to the appellant; that the man said he was not paying any rent to anyone, and never did pay any rent to appellant. Assuming that this testimony by appellant with reference to his actions was sufficient to raise a conflict upon the question of an attempted interference with possession, and that the finding of the court upon this subject was, therefore, one that cannot be disturbed upon appeal, this finding would warrant an affirmance only of that portion of the order of the trial court which restrains the appellant from interfering or attempting to interfere with the possession of the receiver. This portion of the order, however, is of minor importance under the facts here, because an affirmance of the same can in no way prejudice the appellant, he having taken the position that he never has interfered nor attempted to interfere with the possession of the receiver and does not intend to do so, and therefore such an order is not prejudicial to him. This is especially true in view of the fact that it is clear from all the cases, and indeed it is admitted by appellant that whatever the character of the receivership, the court appointing the receiver has power to restrain an actual interference with the possession of its receiver, and a recognition of this rule of law by appellant should have upon his future conduct the same force and effect as the restraining order already issued. Conceding then, in support of the finding of the trial court, that there is a conflict in the evidence as to the interference or attempted interference with the possession of the receiver, the portion of the order restraining such interference must be affirmed.

There are several other matters ably urged by appellant in his briefs which seem to us to have much merit, but in

view of our conclusion upon the main question involved, a discussion of these other matters becomes unnecessary.

The portion of the decree appealed from which declares the sale under execution to be null and void, and the portion thereof which restrains and enjoins appellant from selling, mortgaging, hypothecating, or in any other way disposing of, or attempting to dispose of, the property involved herein is reversed, the other portions of the order to stand affirmed.

BRITTAIN, J., Concurring.—While I concur in the decision reversing the order appealed from in so far as it declared the execution sale to be void and in so far as it restrained the appellant from hypothecating or disposing of the property involved, I cannot agree with the grounds stated in the opinion by Mr. Presiding Justice Langdon as those upon which the decision has been reached. In my view of the law and of the duty of this court that opinion is objectionable in three particulars.

First: In the opinion of the presiding justice it is stated that it is well settled that in a foreclosure proceeding the court cannot try the question of title of those claiming adversely to both the mortgagor and mortgagee. (*Murray v. Etchepare*, 129 Cal. 318, [61 Pac. 930]; *Cady v. Purser*, 131 Cal. 552, [82 Am. St. Rep. 391, 63 Pac. 844].) This rule is correctly applied in the further statement that "the order in the present case annulling the deed to the appellant cannot be justified, therefore, upon the ground of an adjudication of title as between the appellant and the mortgagor and those claiming under it, because the lower court was powerless to make such an adjudication." Based upon this statement and a review of cases, including the Petaluma Savings Bank case (*Petaluma Sav. Bank v. Superior Court*, 111 Cal. 488, [44 Pac. 177]), in the opinion of the presiding justice the conclusion is reached that a receivership in a mortgage foreclosure case "is but a provisional remedy for the sole and exclusive benefit of the plaintiff," and for that reason, a sale under execution not being an interference with the possession of the receiver, the order of the court annulling the deed to the appellant and enjoining him from mortgaging or disposing of the property was erroneous. This amounts to a decision that the execution

sale was valid.   In my opinion, such an adjudication was not necessary to the determination of this appeal; it is revolutionary in character and opens the door to vexatious litigation.

A lengthy argument was made on behalf of the appellant to show that under the decision of the supreme court in the case of *Petaluma Sav. Bank* v. *Superior Court, supra,* a receivership in a foreclosure proceeding is differentiable from a general receivership.   On the other hand, the respondent, in reliance upon the case of *Grosscup* v. *German Sav. & Loan Soc.,* 162 Fed. 947, maintains that the same rules apply to a receivership in a foreclosure proceeding as are generally recognized.   It is wholly unnecessary and would be improper on this appeal to determine this question, because, even though the respondent's broadest contentions should be upheld, and all the rules applicable to federal receiverships applied, the order purporting to vacate the execution sale could not be sustained.

The general rules to which reference has been made not only permit but require a court to protect the possession of its receiver.   "No other court of co-ordinate jurisdiction has any power or authority to interfere or meddle with the property in the hands of a receiver. . . . This rule is essential to the orderly administration of justice and to prevent unseemly conflict between courts whose jurisdiction embraces the same subjects and persons, and has no reference to the superiority of one tribunal over the other, nor to the superiority in ranks of the several claims, in behalf of which the conflicting jurisdictions are invoked."   (23 R. C. L., Receivers, sec. 71.)

These general rules have been modified to some extent in this state in their application to receiverships granted in divorce cases.   The Petaluma Savings Bank case, in my opinion, does not support the conclusion reached by the presiding justice in this case.   It is differentiable from the present case in three particulars: First, the receiver appointed in the divorce case was not in possession of any of the lands, but was claiming to be in possession and was actually endeavoring to take possession at the time of the execution sale; secondly, as was pointed out in the opinion by Mr. Chief Justice Beatty, the sole authority for the appointment of a receiver in a divorce case is to

enable the court to require the husband to give reasonable security for providing maintenance and making payments of alimony. In a foreclosure suit, subject to the rights of third parties, the court takes possession of the *corpus* of the property by a receiver for the purpose of conserving the rents, issues, and profits, for the benefit of anyone who may in that proceeding establish a right thereto. Lastly, the final judgment in the divorce action involved in the Petaluma Bank case (*White* v. *White*, 130 Cal. 597, [80 Am. St. Rep. 150, 62 Pac. 1062]), was rendered before the recovery of the judgment of the Petaluma Savings Bank. As was stated, also, in the opinion of *White* v. *White,* the receiver had not taken possession of any property, and the functions originally vested in him terminated with the entry of the judgment. Any new duties conferred upon him by the judgment were in excess of the jurisdiction of the court.

If the Petaluma Bank case is authority for the sale of property in the hands of the receiver in a divorce case under process issued out of a court of co-ordinate jurisdiction, it is an exception to the general rule, and the exception ought not to be extended to other cases of receiverships. To extend this exception to foreclosure receiverships would amount to an invitation for collusive sales pending foreclosure by which a mortgagee entitled to satisfaction upon a defaulted mortgage debt might be held in litigation for years during the pendency of appeals involving the determination of whether or not buyers at such sales acquired title. The effect of the rule stated in the opinion of the presiding justice amounts to an adjudication that the appellant in the present case acquired title under the execution sale. If the trial court on this proceeding had no power to adjudicate that the appellant did acquire title by the sale, this court is without power to adjudicate that the sale was good. Such an adjudication amounts to a determination of the question of title.

Second: In the suit pending for the foreclosure of the mortgage, in which a receiver had been appointed, the receiver, who is the sole respondent on this appeal, procured an order of the superior court in a proceeding instituted by him against the appellant, who was never made a party to that suit, in terms purporting to vacate and

annul a sale under execution of another judgment to the appellant of certain real property included within the mortgage, and further enjoining the appellant from interfering with the possession of the receiver or dealing with the title to the property. The mortgage involved in the foreclosure proceeding was to secure the payment of bonds aggregating $2,000,000 issued by the Sunset Road Oil Company. The mortgagee was the Mercantile Trust Company of San Francisco. The mortgage, among other property, covered certain lands held by the Sunset Road Oil Company and others as tenants in common. Prior to the commencement of the foreclosure suit two of the tenants in common, Anita M. Dewey and D. W. Hobson, sued the other tenants in common and the mortgagee in partition, *lis pendens* being filed when the suit was commenced. While that suit was pending, the foreclosure suit was commenced, and John Daniel, the present respondent, was appointed and qualified as receiver of the mortgaged property. He did not seek to intervene in the pending partition suit and it was not necessary that he should have been made a party to that suit.

The final decree in the partition suit awarded specific property free from all liens to the plaintiffs in that suit and awarded to the Sunset Road Oil Company other specific property subject to the mortgage of the Mercantile Trust Company. The decree provided that the plaintiffs were entitled to $1,182.75 and costs, of which the sum of $1,000 was allowed as an attorney's fee to the present appellant, who was the attorney for the plaintiffs in the partition suit. The decree further provided that two twenty-fifths of the amount so determined should be a lien on the land set apart to the plaintiffs, and that twenty-three twenty-fifths thereof should be a lien upon the land set apart to the defendant Sunset Road Oil Company "prior to the said mortgages and liens" theretofore mentioned in the decree.

None of the defendants in the partition suit appealed from the judgment establishing the priority of the lien so imposed. In legal effect, as between the parties, this was a consent judgment making the lien of the mortgage then in suit subordinate to the lien of the twenty-three twenty-fifths of the amount awarded in the partition · suit.

Except as thus stated, the judgment in the partition suit had no effect upon the foreclosure suit or the receivership. It must be borne in mind that the prior lien was the lien of the plaintiffs in the partition suit. The present appellant received nothing by virtue of that decree. The plaintiffs in the partition suit were simply prior lienholders.

In the foreclosure suit the prior lienholders were not necessary parties. They might have been made parties by their own intervention, and had they been made parties by proper pleadings, their right as prior lienholders would necessarily have been protected in the foreclosure suit, either by preliminary order or in the final decree. [1] While it is generally the rule that claims adverse to both the mortgagor and mortgagee cannot be litigated in a foreclosure suit, if the adverse claimants subject themselves to the jurisdiction of the court in the foreclosure suit, it being before a court of equity, complete justice may be done. (*Van Loben Sels* v. *Bunnell*, 131 Cal. 489, [63 Pac. 773]; *Dobbins* v. *Economic Gas Co.*, 182 Cal. 616, [189 Pac. 1073].) The undisputed evidence shows that instead of intervening in the foreclosure suit, the plaintiffs in the partition suit, through the appellant, as their attorney, sought to collect the amount of the lien upon the property involved in the foreclosure suit from the mortgagee and its attorneys, and that the appellant made no attempt to make such collection from the receiver, nor was any application made to the court in the foreclosure suit for leave to enforce the prior lien imposed on the mortgaged property by sale under execution issued on the judgment in the partition suit. Regardless of any reasons or excuses advanced for not applying to the court having jurisdiction of the receiver when payment was not made by or on behalf of the mortgagee, as a matter of fact execution was issued on the judgment in the partition suit and levy was made, followed by a sale under that judgment. The certificate of sale was duly recorded on February 18, 1914. In May, 1915, there having been no redemption nor offer of redemption, a sheriff's deed issued on the certificate and was duly recorded on May 17, 1915, sale being made to the appellant for $1,307.70.

On December 20, 1916, in the foreclosure suit the receiver filed a petition setting forth with some elaboration the foregoing facts, praying for an order directing the appellant to show cause why he should not be adjudged guilty of contempt of court for interfering or attempting to interfere with the possession of the receiver, also for a temporary restraining order to prevent' him from interfering with such possession and from selling, pledging, mortgaging, hypothecating, or in any other way disposing or attempting to dispose of the property in question. The record shows that when this matter came on for hearing, it was very definitely agreed between the parties that all proceedings for contempt be abandoned and the right to proceed for contempt for past acts be waived. Thereafter, by amendment, the proceeding was changed so that the restraining order was maintained in force until the order appealed from was made, and by amendment of the petition the court undertook to determine the validity of the execution sale. It is to be noted that the appellant at all times reserved his objections to the court proceeding with the hearing because of its lack of power to determine the question of title upon the amended petition, and that the allegations of the petition upon which the proceeding was based were wholly insufficient to warrant the relief sought by the petitioner. Upon this record, the receiver with the approval of the court, having waived all right to proceed against the appellant for contempt based on past acts, the court was without power to make any order except one of injunction as to future acts. It certainly could not in this ancillary proceeding adjudicate upon the validity of the execution sale.

Third: In addition to the facts stated in the opinion of the presiding justice the record shows that of the properties mortgaged to secure the payment of the issue of bonds of $2,000,000, of which there were outstanding bonds of the value of $1,190,000, the appellant as the attorney for the plaintiffs in the partition suit caused to be sold to satisfy the lien of about $1,200 over 400 acres of the land which was the original refining property of the Oil Company, on which there were a number of buildings and structures, pipe-lines, and all sorts of equipment necessary for a refinery. Under this sale the appellant bought all

that property for $1,307.70. He made no application to the receiver, who had sufficient money in his hands to pay the prior lien, and who, after learning of the sale, tendered to the appellant all money he had expended, with interest, which tender was rejected on the sole ground that it was not made in gold coin. Neither did he apply to the court for leave to sue the receiver or to sell the property under execution. The receiver, relying upon the general rule prohibiting interference with receivers, could not in this proceeding take the opposing positions on one hand that the sale was void, and, on the other hand, that it should be set aside upon equitable grounds, if such grounds exist. If this court announces the rule that in a foreclosure suit property in the hands of a receiver may be sold under process of a court of co-ordinate jurisdiction, the bondholders, the mortgagee, the bondsman of the receiver and the receiver himself will be deprived of any possibility of litigating before a court having power to determine whether the execution sale was void or voidable, or valid, any question of equitable cognizance which might possibly be raised in such a suit.

[2] Solely on the ground that the trial court in this proceeding was without power to adjudicate on the question of title and in recognition of the fact that the appellant acquired at the sale something which eventually may or may not be determined to have vested him with title, I concur in the conclusion that the order appealed from, in so far as it purports to vacate the execution sale and in so far as it purports to restrain the appellant from selling or dealing with his justiciable claim of title acquired while the property was *sub judice,* must be reversed. The order appealed from should be affirmed in so far as it restrains the appellant from interfering with the possession of the receiver.

NOURSE, J., Concurring.—I concur in the judgment for the reasons stated in the opinion of Justice Brittain.

A petition for a rehearing of this cause was denied by the district court of appeal on January 17, 1921, and a petition to have the cause heard in the supreme court,

after judgment in the district court of appeal, was denied by the supreme court on February 17, 1921.

All the Justices concurred, except Olney, J., who voted for granting of petition.